[No. S039538. May 18, 1995.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT EARL JENKINS, Defendant and Respondent.

COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and David H. Rose, Deputy Attorneys General, for Plaintiff and Appellant.

Stuart R. Rappaport, Public Defender, and Michael L. Chastaine, Deputy Public Defender, for Defendant and Respondent.

OPINION

GEORGE, J.—We granted review in this case to resolve several questions that have arisen with regard to the proper application of Penal Code section

667.7,[1] a habitual offender sentencing provision enacted in 1981 and predating the recently enacted "three-strikes" legislation.[2] In particular, we must determine (1) whether a defendant who is convicted of murder and meets the requirements for sentencing as a habitual offender under section 667.7, subdivision (a), properly should be sentenced under section 190 (as the Court of Appeal held in this case) or instead under section 667.7; (2) if a defendant convicted of murder properly may be sentenced under section 667.7, whether the minimum period of imprisonment that he or she must serve before becoming eligible for parole is determined by taking into consideration the term imposed pursuant to any sentence enhancement for one or more prior serious felony convictions (§ 667, subd. (a)); and (3) whether a defendant who has committed more than one violent felony, each of which independently would subject the defendant to a life term under section 667.7, may receive consecutive life term sentences under section 667.7 or instead is limited in a single proceeding under that statute to receive a potential sentence of a single life term.

For the reasons that follow, we conclude (1) that a defendant who is convicted of murder and meets the requirements for sentencing as a habitual offender under section 667.7, must be sentenced under that section rather than section 190; (2) the terms of any applicable sentence enhancements, including an enhancement imposed for a prior serious felony conviction (§ 667, subd. (a)), must be included in the calculation of the minimum period of imprisonment that a defendant is required to serve before becoming eligible for parole; and (3) section 667.7 does not preclude the imposition of consecutive life terms upon a defendant who commits several offenses, each of which is punishable under section 667.7. Because the Court of Appeal reached a contrary conclusion as to the first issue, the judgment of that court must be reversed.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]Effective March 7, 1994—after the commission of the offense at issue in this case— section 667 was amended to add a separate sentencing scheme commonly referred to as the "three-strikes" law (Stats. 1994, ch. 12), which is contained in the newly added subdivisions (b) through (j) of section 667. At the General Election held on November 8, 1994, the voters of California passed an initiative measure designated on the ballot as Proposition 184 and codified as section 1170.12, the provisions of which correspond generally to the three strikes law.

The three strikes scheme does not supersede the habitual offender scheme under section 667.7, but is similar to it in several respects, in that it mandates a life term sentence for a felony conviction if a defendant has suffered two or more prior violent or serious felony convictions. Under the three strikes scheme, however, the minimum term of imprisonment is calculated as the greatest of three alternatives, one of which is imprisonment in the state prison for twenty-five years. (§ 667, subd. (e)(2)(A).) If the prosecution pleads and proves that a defendant qualifies for sentencing under the three strikes scheme (§ 667, subd. (f)(1)), the defendant must be sentenced pursuant to its provisions, even if he or she otherwise would qualify for sentencing under section 667.7 or some other sentencing statute. (§ 667, subd. (f)(1).)

## I

On September 9, 1990, at 2:30 a.m., defendant entered the San Jose residence of Raymond Pacheco, Ben Padilla, and Cecilia McLaughlin. He strangled and stabbed Pacheco, fatally wounding him. He then threatened Padilla with a knife and struck his head with a toaster, causing a serious laceration.

By information defendant was charged with one count of murder (§ 187), with the additional allegation that he personally used a deadly weapon during the commission of that offense (§ 12022, subd. (b)), as well as two counts of assault with a deadly weapon upon Padilla (§ 245, subd. (a)(1)). The information alleged, with respect to all three counts, that defendant met the requirements of habitual offender status under section 667.7, subdivision (a), in that he used force likely to produce great bodily injury in committing each of the current offenses and had served two prior separate prison terms for offenses listed in section 667.7, subdivision (a). It was further alleged, with respect to all three counts, that defendant had suffered two prior serious felony convictions within the meaning of section 667, subdivision (a).

Following a jury trial, defendant was found guilty of one count of second degree murder and two counts of assault with a deadly weapon, and the jury found true the allegation that he personally had used a deadly weapon in the commission of the murder. The jury also found true the allegations qualifying defendant as a habitual offender under section 667.7, subdivision (a), and the allegations of two prior serious felony convictions under section 667, subdivision (a).

At sentencing, the trial court concluded that defendant's sentence for the second degree murder conviction should be imposed pursuant to the habitual offender provisions of section 667.7. On this basis, the court sentenced defendant, on the second degree murder conviction, to a term of life imprisonment, with a minimum period of confinement of 20 years prior to parole eligibility.[3] The court also imposed a three-year term of imprisonment, with a ten-year enhancement for the two prior felony convictions (§ 667, subd. (a)), for each of the two assault-with-a-deadly-weapon convictions, but pursuant to section 654 stayed the sentence for one of these convictions and ordered both of them "stricken," purportedly pursuant to the mandate of section 667.7 (as interpreted in a prior Court of Appeal decision [*People* v. *Victor* (1991) 227 Cal.App.3d 518 (278 Cal.Rptr. 7)]). As a result, the trial

---

[3]The record is unclear as to the basis for the trial court's specification of the 20-year minimum parole eligibility date, the first of the 3 alternative minimum parole eligibility dates set forth under section 667.7, subdivision (a)(1). (See discussion, *post,* in pt. II.)

court sentenced defendant, in total, to a life term, with a 20-year minimum parole eligibility date.

Both the People and defendant appealed from this initial judgment. On appeal, the Court of Appeal affirmed the convictions and upheld the use-of-a-deadly-weapon finding, but reversed the finding of habitual offender status under section 667.7 on the ground the jury was instructed improperly with regard to section 667.7, subdivision (a)'s element of use of force likely to produce great bodily injury. The Court of Appeal accordingly vacated the sentence and remanded the cause to the trial court for further proceedings in accordance with the views expressed in the opinion rendered on appeal. The People's appeal was dismissed as moot.

At resentencing, the trial court indicated it would reimpose a sentence of "20 to life" in the event defendant admitted the allegations of personal use of force likely to produce great bodily injury within the meaning of section 667.7, subdivision (a), with respect to each of the three counts of which he stood convicted. The prosecutor objected on the following grounds to this proposed sentence. First, contrary to defendant's argument, the court was not required "to incorporate everything into a 20 year to a life sentence," i.e., imposition of a life sentence under section 667.7 on one count did not preclude imposition of consecutive life terms of imprisonment on separate, additional counts. In this regard, the prosecutor argued that under the circumstances of the present case, a separate habitual-offender life term or terms for the assault-with-a-deadly-weapon convictions should be imposed consecutively to the sentence for the second degree murder conviction. Second, the prosecutor further argued that the "20 to life" sentence was itself contrary to law, and that, under a proper interpretation of section 667.7, defendant should face a minimum sentence of at least 25 years—15 years for the murder, plus a 10-year enhancement term for the 2 prior serious felony convictions—rather than the 20-year period specified by the court.

Following defendant's admission, with respect to each count, that he had acted with the specific intent to inflict great bodily injury in committing the offenses, the trial court sentenced him to a life term under section 667.7 for the second degree murder conviction, with a 20-year minimum period of imprisonment prior to parole eligibility, and ordered stricken the section 12022, subdivision (b), enhancement. The court again imposed a term of three years, with a ten-year enhancement term for the two prior felony convictions (§ 667, subd. (a)), for each of the two current assault convictions but then again "struck" the sentences for the assault convictions on the ground that, under section 667.7, these sentences "merged" into the life sentence imposed by the court under section 667.7 for the second degree murder conviction.

The People once again appealed from the judgment, challenging the sentence. The Court of Appeal reversed a second time, concluding that the trial court erred in sentencing defendant under section 667.7 for the second degree murder conviction, the appellate court construing the then recently filed decision in *In re Diaz* (1993) 13 Cal.App.4th 1755 [17 Cal.Rptr.2d 395] (discussed in more detail, *post*) as exempting a murder conviction from the sentencing provisions of section 667.7. The Court of Appeal also concluded that the trial court, in striking the sentences for the two assault convictions, had proceeded under the erroneous premise that it lacked discretion to impose sentences for these separate offenses that would run consecutively to the life sentence imposed under section 667.7 on the second degree murder conviction. The Court of Appeal remanded the case for resentencing.

On petition of both defendant and the People, we granted review. Both parties contend the Court of Appeal erred in holding that defendant's conviction of second degree murder was excluded from the sentencing scheme of section 667.7. Additionally, the People contend that, in determining the minimum period of imprisonment under a life term imposed pursuant to section 667.7, the trial court must include in its calculation the term of any applicable enhancements, including those imposed pursuant to section 667, subdivision (a), for prior serious felony convictions. Defendant contends that the imposition of a life term under section 667.7 precludes the imposition of additional terms for separate current offenses consecutively to the life term sentence.

We shall address each of these contentions below.

## II

Section 667.7 creates a self-contained sentencing scheme for habitual violent offenders, mandating a life sentence upon conviction of a felony involving the infliction of, or use of force likely to produce, great bodily injury (hereafter referred to as a qualifying felony conviction), if the defendant meets the additional requirements for sentencing as a habitual offender. The statute provides in part that "[a]ny person convicted of a felony in which the person inflicted great bodily injury as provided in Section 12022.7, or personally used force which was likely to produce great bodily injury, who has served two or more prior separate prison terms as defined in Section 667.5" for numerous specified violent crimes, "is a habitual offender and shall be punished as follows: [¶] (1) A person who served two prior separate prison terms shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for [i] 20 years, or [ii] the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing

with Section 1170) of Title 7 of Part 2, or [iii] any period prescribed by Section 190 or 3046, whichever is greatest." (§ 667.7, subd. (a), bracketed numbers added.)

The statute also provides for the reduction of any minimum term of imprisonment by appropriate credits, and a "washout" provision that excludes earlier prison terms served "prior to a period of 10 years in which the person remained free of both prison custody and the commission of an offense which results in a felony conviction." (§ 667.7, subd. (b).) Finally, the statute makes clear that "[t]his section shall not prevent the imposition of the punishment of death or imprisonment for life without the possibility of parole." (*Ibid.*)[4]

---

[4]Section 667.7, subdivision (a), provides in full: "Any person convicted of a felony in which the person inflicted great bodily injury as provided in Section 12022.7, or personally used force which was likely to produce great bodily injury, who has served two or more prior separate prison terms as defined in Section 667.5 for the crime of murder; attempted murder; voluntary manslaughter; mayhem; rape by force, violence, or fear of immediate and unlawful bodily injury on the victim or another person; oral copulation by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person; sodomy by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person; lewd acts on a child under the age of 14 years by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person; a violation of subdivision (a) of Section 289 where the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person; kidnapping as punished in subdivision (d) of Section 208, or for ransom, extortion, or robbery; robbery involving the use of force or a deadly weapon; assault with intent to commit murder; assault with a deadly weapon; carjacking involving the use of a deadly weapon; assault with intent to commit murder; assault with a deadly weapon; assault with a force likely to produce great bodily injury; assault with intent to commit rape, sodomy, oral copulation, penetration of a vaginal or anal opening in violation of Section 289, or lewd or lascivious acts on a child; arson of a structure; escape or attempted escape by an inmate with force or violence in violation of subdivision (a) of Section 4530, or of Section 4532; exploding a device with intent to murder in violation of Section 12308; exploding a destructive device which causes bodily injury in violation of Section 12309, or mayhem or great bodily injury in violation of Section 12310; exploding a destructive device with intent to injure, intimidate, or terrify, in violation of Section 12303.3; any felony in which the person inflicted great bodily injury as provided in Section 12022.7; or any felony punishable by death or life imprisonment with or without the possibility of parole is a habitual offender and shall be punished as follows: [¶] (1) A person who served two prior separate prison terms shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years, or the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046, whichever is greatest. Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term in a state prison imposed pursuant to this section, but the person shall not otherwise be released on parole prior to that time. [¶] (2) Any person convicted of a felony specified in this subdivision who has served three or more prior separate prison terms, as

■ Thus, when the prosecution pleads and proves that a defendant meets the requirements for sentencing as a habitual offender under section 667.7, subdivision (a)(1), the court must impose a life term for the qualifying felony conviction and designate the minimum parole eligibility release date, choosing the alternative that results in the longest period of required imprisonment: (1) 20 years, (2) the period equal to the hypothetical determinate term that would be imposed under section 1170 (if the qualifying conviction is one that otherwise would be punishable under § 1170; see *People* v. *Gonzalez* (1988) 201 Cal.App.3d 811, 814 [247 Cal.Rptr. 501]), or (3) the "period prescribed by Section 190 or 3046" (if the qualifying conviction is murder or any other offense that otherwise, independently of section 667.7, would be punishable by a life sentence).

■ Both the People and defendant assert that, contrary to the determination of the Court of Appeal, a defendant who is convicted of murder and who otherwise would be sentenced under section 190 upon that conviction,[5] must be sentenced under section 667.7 if he or she meets the requirements of habitual offender status specified under subdivision (a) of section 667.7.

We agree. The evident purpose of the latter statute—to provide a distinct and more severe sentencing scheme for violent habitual offenders—plainly suggests that the Legislature intended it to apply, a fortiori, to murderers as well as to criminals who commit other violent, but less serious, felonies. Furthermore, nothing in the language of section 667.7 indicates that the statute was intended to exempt those defendants who are convicted of murder and who otherwise qualify as habitual offenders. Indeed, as we have seen, the statute provides that, in setting the minimum parole eligibility release date, the court must choose among three alternatives in determining the minimum period of imprisonment—one being "any period prescribed by Section 190 . . . ." Therefore, when the qualifying felony conviction is murder, the minimum period of required imprisonment under section 667.7 must be determined with reference to the term of imprisonment that a murderer otherwise would be required to serve if he or she were sentenced under section 190 (provided section 667.7's threshold of a 20-year minimum

defined in Section 667.5, for the crimes specified in subdivision (a) of this section shall be punished by imprisonment in the state prison for life without the possibility of parole."

Section 667.7, subdivision (b), limits the application of subdivision (a) in one respect, providing that "[n]o prior prison term shall be used for this determination which was served prior to a period of 10 years in which the person remained free of both prison custody and the commission of an offense which results in a felony conviction."

[5]Section 190 provides in pertinent part that, with specified exceptions, "every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life."

term is met). If the offense of murder were totally excluded from the sentencing provisions of section 667.7, this segment of the third alternative —"any period prescribed by Section 190"—would be totally meaningless and superfluous.

The Court of Appeal reached a contrary conclusion, relying upon its earlier decision in *In re Diaz, supra,* 13 Cal.App.4th 1755 (hereafter *Diaz*), which held that every defendant convicted of murder must be sentenced under section 190 for that offense, even if he or she qualifies as a habitual offender under section 667.7. (13 Cal.App.4th at p. 1760.) In order to explain fully the basis for the rather surprising holding in *Diaz*, we review in some detail both the historical background and the reasoning of that decision.

*Diaz, supra,* 13 Cal.App.4th 1755, was preceded by a federal district court decision, *Brodheim v. Rowland* (N.D.Cal. 1991) 783 F.Supp. 1245 (affd. in part and vacated in part in *Brodheim v. Rowland* (9th Cir. 1993) 993 F.2d 716).[6] As a result of the *Brodheim* decision, it appeared that, although the Legislature generally had not extended worktime credits to persons con- victed of murder, the state nonetheless would be obligated under equal

---

[6] In *Brodheim*, the federal district court was called upon to determine whether a prisoner sentenced under section 190 to an indeterminate life term for murder was eligible for "one-for-one" worktime credits under section 2933 (conferring a one-day reduction in time served for each day of participation in a work program). Both an advisory opinion of the California Attorney General (70 Ops.Cal.Atty. Gen. 49 (1987)) and a decision of a California appellate court (*In re Monigold* (1988) 205 Cal.App.3d 1224 [253 Cal.Rptr. 120]) had concluded that a murderer sentenced under section 190 was *not* eligible for section 2933 credits, but was eligible only for the less generous conduct credits provided under section 2931 (conferring a one-day reduction in time served for each two days of good conduct). The petitioner prisoner in *Brodheim* challenged the denial of his opportunity to earn credits under section 2933, asserting, among other grounds, that because section 667.7 afforded credits under section 2933 to murderers who were *habitual violent offenders,* his rights to due process of law and equal protection of the laws were denied by the withholding of such credits from petitioner, a nonrecidivist murderer sentenced under section 190.

Relying upon the last sentence of subdivision (a)(1) of section 667.7, pertaining to credits ("Article 2.5 (commencing with section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term in a state prison imposed pursuant to this section . . . ."), the court in *Brodheim* concluded that all persons sentenced under section 667.7 were eligible for section 2933 credits. Construing section 667.7 in this manner, the court observed that, if sentenced under section 667.7, a recidivist murderer who had been convicted of two prior violent felonies would be eligible for section 2933 credits, whereas a nonrecidivist murderer sentenced under section 190 would be ineligible (and entitled only to the less generous conduct credit provided under section 2931). Discerning no rational basis for a sentencing scheme that would lessen the punishment for recidivist murderers by providing them with worktime credits more generous than those accorded first-time murderers, the court in *Brodheim* held that the statutory scheme for allocation of worktime credits was unconstitu- tional on equal protection grounds. (783 F.Supp., at pp. 1250-1251.) To cure this constitu- tional defect, the court in *Brodheim* mandated that the Department of Corrections afford

protection principles to grant such credits provided under section 2933 to all murderers sentenced under section 190, because of the provisions of section 667.7 entitling the much smaller class of murderers who qualify for habitual offender status to these credits.

In *Diaz, supra,* 13 Cal.App.4th 1755, the Court of Appeal, responding to the federal district court decision in *Brodheim,* concluded that the problem of potentially unequal treatment should be resolved in a fashion significantly different from that contemplated by the lower federal court. The issue to be determined in *Diaz* was identical to that involved in *Brodheim*—whether a prisoner serving an indeterminate life term under section 190 was eligible for worktime credits under section 2933. Like the district court in *Brodheim,* the appellate court in *Diaz* construed section 667.7 as affording section 2933 credits to all defendants sentenced under its provisions. And, like the district court in *Brodheim,* the appellate court in *Diaz* recognized that the intent of the Legislature in enacting section 667.7 would be subverted in the event that statute were construed as according more lenient treatment to *recidivist* murderers convicted twice of prior violent felonies than to *nonrecidivist* murderers. The court, also observing that section 190 was part of the Briggs Initiative approved by the voters in 1978 (prior to the enactment of section 2933 in 1982), concluded that to allow murderers to be eligible, under section 667.7, for section 2933 credits would infringe impermissibly upon the earlier enacted initiative and thus violate the intent of the voters who had not prescribed such credits for persons sentenced under section 190.[7] In order to effectuate the intent of the Legislature and the electorate, and to

---

worktime credits under section 2933 to the petitioner, a nonrecidivist murderer who had been sentenced under section 190.

On appeal to the Ninth Circuit, that court ultimately vacated the judgment of the district court to the extent the lower court had upheld the prisoner's claim to section 2933 credits on constitutional equal protection grounds. (993 F.2d 716, 717.)

[7]The court in *Diaz* also concluded that "the plain meaning of section 190 is that the statute applies to every person convicted of murder and that such persons must be sentenced under section 190 and receive the punishment that it prescribes" (13 Cal.App.4th at p. 1760), but did not cite any authority in support of this proposition. To the extent the court concluded that a person convicted of murder could not be sentenced under any statute other than section 190, its construction of that statute is not compelled by the language of section 190 or any other provision of the Briggs Initiative. Section 190 simply provides that every person convicted of murder "shall suffer confinement in the state prison" for specified periods. The only reasonable construction of this language is that the term prescribed by section 190 establishes a "floor," i.e., a minimum term of imprisonment that a person convicted of murder is required to serve, and does not establish that a murderer must be sentenced under this statute to the exclusion of any other sentencing scheme. Section 190 refers to persons convicted of murder, but neither this statute nor any other provision of the initiative indicates that the electorate intended to preclude a murderer from receiving a total sentence that is greater than the term provided under section 190 where other factors, in addition to the fact of the conviction of

avoid the anomalous result of nonrecidivist murderers being sentenced more severely than recidivist murderers, the court in *Diaz* reasoned that it was compelled to exclude murderers—even those who qualified as habitual offenders under the terms of the statute—from sentencing under section 667.7. The court accordingly held that *every* person convicted of murder must be sentenced under section 190. (13 Cal.App.4th at p. 1760.)

We agree with the court in *Diaz* to the extent it recognized that, in enacting section 667.7, the Legislature intended to deal in a more severe manner with those violent offenders who have demonstrated a repeated inability to conform to the norms of society (see *People v. Gonzalez, supra*, 201 Cal.App.3d at p. 815), and to lengthen, not shorten, sentences for habitual violent offenders. We also agree that an interpretation of section 667.7 that would punish recidivist murderers more leniently than nonrecidivist murderers would contradict the Legislature's intent and lack any rational justification. As we shall explain, however, we believe that the court in *Diaz* failed to adopt the appropriate method of harmonizing the foregoing sentencing statutes in its attempt to avoid this anomalous result.

Familiar canons of statutory construction require that, in construing a statute, a court ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining that intent, we consider the statute read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework. (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 398 [20 Cal.Rptr.2d 523, 853 P.2d 978]; *City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034].) We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. (*People v. King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].)

As we have seen, the language of section 667.7 indicates quite clearly that it was intended to apply to persons convicted of murder who, in the past, have served two or more prior prison terms for violent felonies listed in that statute. Moreover, the general legislative purpose of the statute supports its application to those habitual offenders convicted of murder. Considered as a whole, section 667.7 reasonably cannot be interpreted as excluding from its provisions a defendant who has been convicted of murder and who otherwise qualifies as a habitual offender.

---

murder, are present that increase the defendant's culpability or otherwise warrant greater punishment.

We conclude, contrary to the suggestion in *Diaz, supra*, 13 Cal.App.4th 1755, that sentencing a recidivist murderer under section 667.7 is not inconsistent with section 190 and does not otherwise circumvent the intent of the electorate in adopting the Briggs Initiative.

The court in *Diaz* was led to adopt its strained interpretation of section 667.7, exempting murderers from application of the statute, because of the court's construction of the provisions of section 667.7 pertaining to credits. The court concluded that under this language, in *all* cases, persons sentenced under section 667.7 (including murderers) are entitled to have their minimum sentence reduced by section 2933 worktime credits. As quoted, *ante*, the relevant language pertaining to credits, set forth in the last sentence of section 667.7, subdivision (a)(1), provides that with respect to the minimum period of imprisonment, "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall apply to reduce any minimum term in a state prison imposed pursuant to this section . . . ."

Construed literally, and without regard to the policy underlying the statute as a whole, this sentence can be read to provide for the reduction of the minimum period of imprisonment under section 667.7 by worktime credits under section 2933, as well as conduct credits under section 2931, *in all cases* covered by section 667.7, regardless of the qualifying felony conviction.

██ Interpreting section 667.7 as a whole and in light of its apparent legislative purpose, and to avoid an absurd, clearly unintended result, we believe that the credit provisions of section 667.7 reasonably must be interpreted as providing that the minimum period of imprisonment under that statute is to be reduced by the credits to which any defendant is entitled— but only those credits *for which he or she otherwise would be eligible were the defendant sentenced for the offense in question under a provision other than section 667.7.* Nothing in the language of the credit provisions of section 667.7, which simply refers in a general manner to the article of title 8 of part 1 of the Penal Code pertaining to credits, explicitly mandates that *all* categories of credits within that article be made available under *all* circumstances to *all* persons sentenced under section 667.7. Indeed, although a provision identical to the credit provision in section 667.7 appears in section 190, subdivision (a), it is clear that only limited credits within that article are available to defendants sentenced under section 190. (See § 2933, subd. (e); *In re Monigold, supra,* 205 Cal.App.3d 1224.) For us to follow the construction adopted by the Court of Appeal in *Diaz* would be contrary to the apparent purpose and policy underlying the statute, and would lead to the absurd result that a recidivist sentenced under section 667.7 would serve a shorter period of imprisonment than a person sentenced under an otherwise applicable nonrecidivist sentencing provision. In our view, the only reasonable construction of section 667.7, as applied to a defendant convicted of murder, is to interpret the statute as requiring a recidivist murderer sentenced under its provisions to serve a minimum period of imprisonment that is at

least equal in length to the period of imprisonment that a murderer would be required to serve had he or she been sentenced under section 190, *taking into consideration the limited credits available under section 190.* This interpretation is consistent with section 667.7's overall mandate that the minimum period of imprisonment for any defendant sentenced under that statute must be at least as long as the term of imprisonment the defendant otherwise would receive if he or she were not being sentenced under section 667.7.

The propriety of this interpretation of section 667.7 is confirmed by the Legislature's prompt response to the *Diaz* decision, *supra*, 13 Cal.App.4th 1755. Shortly following *Diaz*, the Legislature enacted section 667.70 (Stats. 1993, ch. 576, § 1), which provides that "[a]ny person *who is convicted of murder and sentenced pursuant to paragraph (1) of subdivision (a) of Section 667.7* shall be eligible only for credit pursuant to subdivisions (a), (b), and (c) of Section 2931." (Italics added.) The Senate bill that enacted this provision contained a declaration of legislative intent that, "in enacting this measure, . . . there shall be no lessening of the minimum term of imprisonment for any person whose qualifying conviction is for murder and who otherwise would be sentenced under section 190 of the Penal Code." (Stats. 1993, ch. 576, § 2.) The statute thus makes clear both that a murderer may be sentenced as a habitual offender under section 667.7 and that, if so sentenced, he or she is ineligible for credits under section 2933 to reduce the minimum period of imprisonment. In enacting section 667.70, the Legislature did not modify the existing provisions of section 667.7 expressly to add murder as a qualifying felony conviction covered by the statute, apparently recognizing that section 667.7 always has been applicable to recidivist murderers. Instead, the Legislature simply clarified that a recidivist murderer sentenced under section 667.7 always must serve at least as long a period of imprisonment as he or she would have served if sentenced under section 190.

 For these reasons, we conclude that the court in *Diaz* erred in concluding that section 667.7 is inapplicable to any person convicted of murder, even a person who otherwise qualifies as a habitual offender. Thus we uphold the trial court's imposition of sentence, upon defendant's conviction of second degree murder, under the provisions of section 667.7.[8]

### III

 Although, as we have seen, both the Attorney General and defendant agree that the sentence for defendant's second degree murder conviction

---

[8]We therefore disapprove the Court of Appeal's decision in *Diaz, supra,* 13 Cal.App.4th 1755, insofar as it is inconsistent with the views expressed in our opinion in the present case.

properly was imposed under section 667.7 rather than section 190, the parties disagree as to the proper calculation of the minimum period of confinement that defendant must serve pursuant to section 667.7. Defendant contends that under section 667.7 the trial court properly set the minimum period of confinement for his conviction at 20 years. The Attorney General, by contrast, maintains that the minimum period of confinement should be 25 years.

To resolve this issue, we turn again to both the relevant language and the apparent legislative purpose of the statute. As already noted, section 667.7 provides in pertinent part that a person who qualifies under its provisions for sentencing as a habitual offender "shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for [i] 20 years, or [ii] the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or [iii] any period prescribed by Section 190 or 3046, whichever is greatest." (§ 667.7, subd. (a)(1), bracketed numbers added.)

In contending that defendant's minimum period of confinement should be 25 years, the Attorney General points out that, had defendant been sentenced under section 190 rather than section 667.7 upon his conviction for second degree murder, he would face a minimum term of 25 years' imprisonment— the 15-year minimum prescribed by section 190 for second degree murder, plus 2 consecutive 5-year enhancements under section 667, subdivision (a), for the 2 prior serious felony convictions he had suffered. The Attorney General argues that defendant should not face a lesser minimum term under section 667.7 than under section 190.

Defendant argues, however, that because the language of section 667.7, quoted above, explicitly provides that "any enhancement" should be taken into account only in determining a potential minimum term under the second alternative (applicable to defendants who are convicted of felonies that otherwise would be punished under section 1170)—and does not include in the third alternative any explicit reference to enhancements (that alternative being applicable to defendants, like the present defendant, who have been convicted of felonies that otherwise would be punishable under section 190) —the statute should not be interpreted to provide for the inclusion of any enhancements in calculating the minimum term applicable under the third alternative. In support of his position, defendant relies upon dictum in the

Court of Appeal's decision in *People* v. *Tuggle* (1991) 232 Cal.App.3d 147, 157 [283 Cal.Rptr. 422].[9]

We believe the Attorney General's proposed interpretation is the more reasonable construction of section 667.7 in light of the statute's structure and apparent legislative purpose. As we have seen, section 667.7 prescribes at the least a 20-year minimum sentence, but then additionally provides that a greater minimum sentence should be imposed if the defendant would face a longer sentence, had he or she been sentenced under the ordinary (i.e., other than section 667.7) sentencing provisions. The language of the second alternative—referring to persons who otherwise would be sentenced under the determinate sentencing provisions of section 1170 et seq.—makes clear that the Legislature intended that the minimum sentence under section 667.7 be calculated with reference to the entire sentence (including any applicable enhancements) that a defendant would face if he or she were not being sentenced under section 667.7, so as to ensure that a defendant who qualifies for habitual offender sentencing does not receive treatment more lenient than that accorded a nonhabitual offender who commits the same offense. Although the third alternative, unlike the second, does not refer specifically to enhancements, nothing suggests that the Legislature intended to provide treatment more lenient for persons who otherwise would be sentenced *under section 190* (i.e., murderers) than for all other habitual offenders.

Moreover, the lack of any explicit reference to the inclusion of sentence enhancements under the third alternative set forth in subdivision (a)(1) of section 667.7 may be explained by the language of section 3046—the other statute referred to in the third alternative. Section 3046 provides that "[n]o

---

[9] In *People* v. *Tuggle, supra,* 232 Cal.App.3d 147, following the defendant's conviction of attempted murder, among other offenses that would be punishable under section 1170 but for section 667.7, the trial court determined that he qualified for sentencing as a habitual offender under section 667.7 and thus imposed a life term with a 20-year minimum parole eligibility date for the attempted murder conviction, plus a 3-year term of enhancement under section 12022.7, *consecutive* to the life term. On appeal, the defendant challenged the imposition, under section 667.7, of an enhancement term consecutive to the life term. The Court of Appeal agreed with defendant, concluding that the sentencing scheme under section 667.7 did not contemplate the imposition of an enhancement term separate from and consecutive to the life term, but that enhancements such as those provided under section 12022.7 must be counted in calculating the minimum period of imprisonment under the second alternative of the three alternative minimum periods of imprisonment set forth in the statute. In reaching this conclusion, the appellate court observed that the first and third alternatives did not refer to, or apparently provide for, the inclusion of enhancements. The court, however, was not confronted with the issue before us in the present case—whether calculation of the minimum period of imprisonment under the third alternative set forth in section 667.7, subdivision (a)(1), must include enhancements—and its passing reference to the lack of any explicit provision for the inclusion of enhancements under this alternative was not pertinent or necessary to its holding.

prisoner imprisoned under a life sentence may be paroled until he or she has served at least seven calendar years *or has served a term as established pursuant to any other section of law that establishes a minimum period of confinement under a life sentence before eligibility for parole*, whichever is greater. . . ." (Italics added.) The italicized language referring to a term established by any other "section of law" clearly includes the 15-year minimum term provided under section 190. But when a defendant who is convicted of murder also is found to have committed prior serious felonies under section 667, subdivision (a), there are "other section[s] of law" that additionally govern the minimum period of confinement that the defendant must serve before becoming eligible for parole. Section 669 provides, in part, that "[w]henever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment imposed pursuant to Section . . . 667 [among other provisions], the determinate term of imprisonment shall be served first and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to Section 3046 or pursuant to any other section of law that establishes a minimum period of confinement under the life sentence before eligibility for parole."

Furthermore, section 667, subdivision (a)(1), itself specifically provides that the five-year enhancement for each separate prior serious felony conviction prescribed by that provision "shall run consecutively" to the term imposed for the present offense. Accordingly, under the terms of section 3046, which incorporates by reference other relevant sections prescribing the minimum period of time a person sentenced to a life term must be imprisoned before becoming eligible for parole, it appears clear that the defendant in the present case, if sentenced under section 190, would not be eligible for parole until he had served the 15-year minimum prescribed by section 190, plus the 2 consecutive 5-year enhancements prescribed by section 667, subdivision (a), for a total of 25 years. Because the third alternative of section 667.7 refers specifically to section 3046, it follows that the same minimum period of imprisonment is embodied in the third alternative.

The more recent enactment of section 667.70 in 1993 confirms that the foregoing interpretation of section 667.7, with respect to calculation of the minimum period of imprisonment under the third alternative, is consistent with and fully effectuates the apparent intent of the Legislature in enacting section 667.7. As noted above, the new legislation contains a statement of intent that "there shall be no lessening of the minimum term of imprisonment for any person [sentenced under section 667.7] whose qualifying conviction is for murder and who otherwise would be sentenced under Section 190 of the Penal Code." (Stats 1993, ch. 576, § 2.) Accordingly, in

calculating the third alternative minimum period of required imprisonment (where the qualifying felony conviction is murder), any applicable enhancement must be included as a component if that same enhancement would be used to lengthen a term of imprisonment imposed under section 190. To the extent it suggests otherwise, we disapprove the dictum in *People* v. *Tuggle, supra,* 232 Cal.App.3d at page 157.

■ Defendant further contends, with respect to calculation of the minimum period of imprisonment required under the second alternative (equal to the hypothetical determinate term under section 1170) or the third alternative (the period prescribed by section 190 or 3046), that the same prior serious felony convictions that qualified defendant as a habitual offender under section 667.7, subdivision (a), may not be relied upon to "enhance" the minimum period of required imprisonment, i.e., the enhancement may not be included as a component in the calculation of that period. Defendant contends such an application would constitute a "dual use" of the prior felony convictions in violation of former subdivision (b) (current subdivision (a)(2)) of section 667.[10]

Section 667 mandates imposition of a five-year enhancement term for a prior serious felony conviction, as defined in section 1192.7, subdivision (c). (§ 667, subd. (a)(1), (4).) Subdivision (a)(2) (former subdivision (b)) of section 667 sets forth a limitation on the application of the enhancement specified under the statute, providing that "[t]his subdivision shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment." Defendant contends that the sentencing scheme under section 667.7 constitutes one of the "other provisions of law" that results in a longer term of imprisonment—a life-term sentence—within the meaning of this subdivision of section 667. Accordingly, he argues, imposition of a sentence under section 667.7 precludes the application of a sentence enhancement under section 667, subdivision (a).

In support of his contention, defendant cites *People* v. *Skeirik* (1991) 229 Cal.App.3d 444, 468 [280 Cal.Rptr. 175], and *People* v. *Lobaugh* (1987) 188

[10]Only two express "dual use" prohibitions appear in the Determinate Sentencing Act. Section 1170, subdivision (b), prohibits imposition of an upper term based upon "the fact of any enhancement upon which sentence is imposed . . . ." California Rules of Court, rule 425(b), states that a fact that is an element of the crime, or that is used to impose an upper term or otherwise enhance a defendant's prison sentence, may not be used also to justify imposition of a consecutive rather than a concurrent sentence. These two dual-use prohibitions are inapplicable in the present case, and defendant cites no other statutory provision or rule prohibiting use of the same prior felony conviction that qualifies a defendant for sentencing under an alternative sentencing scheme (such as section 667.7) for the additional purpose of determining the minimum period of imprisonment under a life term imposed pursuant to that alternative scheme.

Cal.App.3d 780, 784 [233 Cal.Rptr. 683]. Defendant's reliance upon these decisions is misplaced, however. In *Skeirik*, the Court of Appeal, citing dictum in its earlier *Lobaugh* decision, held that section 667.7 constituted one of the "other provisions of law" resulting in a longer term of imprisonment within the meaning of section 667, subdivision (a)(2), because the habitual offender life term was greater than the aggregate term, including section 667 enhancements, that would have been imposed in that case in the absence of section 667.7. Accordingly, the court held that imposition of a section 667.7 life term precluded imposition of an enhancement under section 667, subdivision (a), *consecutive to the life term (after the enhancement already had been applied in the calculation of the minimum period of imprisonment)*. (*Skeirik, supra*, 229 Cal.App.3d at p. 468.)

The Attorney General does not dispute that the term of a section 667, subdivision (a), enhancement may not be imposed consecutively onto a section 667.7 life term. Engrafting a term of enhancement onto the life term would lead to a result inconsistent with the statute's methodology for setting the minimum period of required imprisonment. A court is required to use applicable enhancements to calculate the offender's hypothetical sentence apart from section 667.7—a sentence which, if greater than 20 years, defines the defendant's minimum period of required imprisonment. Nothing in the statute suggests that the Legislature intended that those *same* enhancements be used again to add an additional term of imprisonment onto the life term. (See *People* v. *Burkett* (1991) 1 Cal.App.4th 971, 977 [2 Cal.Rptr.2d 330]; *People* v. *Victor, supra*, 227 Cal.App.3d at p. 524; see also *People* v. *Tuggle, supra*, 232 Cal.App.3d at p. 157, fn. 11.)

*People* v. *Skeirik, supra*, 229 Cal.App.3d 444, however, does not stand for the proposition for which it is cited by defendant—that section 667, subdivision (a)(2), precludes use of the five-year enhancement to define *the minimum period of required imprisonment*. When invoked for this purpose, the five-year enhancement is not being used twice—once to calculate the minimum term, and again to add an additional term onto the life sentence; the enhancement is applied only in the calculation of the minimum period of imprisonment. In the present case, there is no "other provision of law" upon which the prosecution has sought to rely in order to lengthen the minimum period of imprisonment in lieu of a section 667, subdivision (a), enhancement. If the hypothetical term of imprisonment, calculated so as to include enhancements, is less than 20 years, the 20-year period set forth in section 667.7 automatically prevails, without resort to the enhancements.

*People* v. *Jones* (1993) 5 Cal.4th 1142, 1150 [22 Cal.Rptr.2d 753, 857 P.2d 1163], also cited by defendant, does not support his position. In *Jones*,

we held under the predecessor to subdivision (a)(2) of section 667 that, "when multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply." (5 Cal.4th at p. 1150.) Neither section 667.7, nor an indeterminate life term imposed under that section, involves a sentence enhancement. (See *People* v. *Victor, supra,* 227 Cal.App.3d 518, 524, fn. 3; *People* v. *Tuggle, supra,* 232 Cal.App.3d at p. 157, fn. 11.) Thus, we are not confronted with a situation presenting one or more statutory enhancement alternatives to a section 667, subdivision (a), enhancement.

For these reasons, we conclude that subdivision (a)(2) of section 667 does not preclude use of a prior-serious-felony enhancement as a component in the calculation of the minimum period of imprisonment that a defendant must serve under a section 667.7 life term. Rather, the minimum period of imprisonment required under the second and third alternatives must include as a component the term of any enhancement imposed under section 667, subdivision (a), for a prior serious felony conviction.

IV

■ The final issue we must determine is whether a defendant, who is convicted of a number of serious felonies, each of which separately qualifies the defendant for a life sentence under section 667.7, may be sentenced to only a single life sentence under section 667.7, or may be sentenced to consecutive life sentences. The trial court in this case apparently was of the view that, as interpreted by the Court of Appeal in *People* v. *Victor, supra,* 227 Cal.App.3d 518, section 667.7 authorized only a single life sentence under such circumstances. Accordingly, the trial court ordered "stricken" the sentences imposed for the convictions of assault with a deadly weapon "as being merged in the sentence imposed as to count 1," the second degree murder conviction. The Court of Appeal, however, disagreed with the trial court, concluding that the lower court was in error insofar as it believed it lacked discretion to impose a life sentence under section 667.7 for one or both of the convictions of assault with a deadly weapon, to run consecutively to the habitual offender life term for second degree murder.

We agree with the Court of Appeal's conclusion with respect to this issue. Section 667.7, like other recidivist punishment statutes that provide for more severe sentences for repeat offenders, specifies the applicable sentence for a present conviction of a qualifying felony committed by a defendant with a recidivist criminal history. Although the defendant's status invokes the increased sentence, it is the new criminal conduct—and in particular one or

more specific felony convictions—for which the defendant presently is being punished. Nothing in the language of section 667.7 precludes imposition of additional terms consecutive to the habitual offender life term when those additional terms arise from separate, independent counts of current substantive crimes, and section 669 explicitly provides, in relevant part, that "[l]ife sentences, whether with or without the possibility of parole, may be imposed to run consecutively with one another . . . ."

Several prior Court of Appeal decisions explicitly have held that a life term imposed under section 667.7, based upon a defendant's habitual offender status as established by the service of two prior prison terms, may be ordered to run consecutively to one or more other section 667.7 life terms, based upon the same prior prison terms, imposed for separate qualifying felony convictions. (See *People* v. *Burkett, supra,* 1 Cal.App.4th 971, 977 ["the fact that more than one life term is based on the same prior convictions does not bar the imposition of consecutive life sentences"]; *People* v. *Skeirik, supra,* 229 Cal.App.3d at pp. 465-466.) In *Skeirik,* the defendant was convicted of two counts of assault with a deadly weapon, among other offenses, and the jury found true a habitual offender allegation under section 667.7, subdivision (a), based upon two prior separate prison terms. The defendant in that case was sentenced to two consecutive indeterminate life terms under section 667.7 for the two assault convictions. On appeal, he asserted he should not have been sentenced to more than one life term based upon the same prior convictions. The court disagreed, holding that each of the defendant's two new convictions for assault with a deadly weapon, which involved separate victims and separate locations, independently qualified the defendant for punishment under section 667.7. (229 Cal.App.3d at p. 466.)

In the present case, the trial court's reliance upon *People* v. *Victor, supra,* 227 Cal.App.3d 518, was misplaced. The *Victor* decision involved only the issue discussed above, namely whether a habitual offender life sentence under section 667.7 may be ordered to run consecutively to a determinate term of imprisonment *for a sentence enhancement,* when the sentence enhancement already has been used in calculating the minimum term of imprisonment under section 667.7. *Victor* concluded that it may not. In *Victor,* however, the court was not presented with the issue now before us, namely whether a section 667.7 life term imposed for one felony conviction may be ordered to run consecutively to another term of imprisonment (including another life term) imposed by reason of *a separate, independent current conviction.*

Thus, we agree with the Court of Appeal's conclusion that the trial court was in error to the extent it believed it lacked authority to impose consecutive life terms on the basis of the separate murder and assault-with-a-deadly-weapon convictions in the present case. At the same time, however, we note

that nothing in the language of section 667.7 *compels* a trial court to impose consecutive life terms when more than one felony conviction qualifies for sentencing under section 667.7 in a single proceeding. In imposing such life terms, the trial court retains discretion under section 669 to order that these terms be served either concurrently or consecutively.

## V

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with the views expressed in this opinion.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., Baxter, J., and Werdegar, J., concurred.