Filed 7/25/25  P. v. Granville CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C099859 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE19920007788) |
| v. | |
| WADE GRANVILLE, | |
| Defendant and Appellant. | |

In 1992, a jury found defendant Wade Granville guilty of assault and found true a great bodily injury enhancement.  The trial court also found several enhancements concerning his prior conviction and prison sentence history to be true and that defendant was a habitual offender within the meaning of Penal Code section 667.7, subdivision (a).[1] Pursuant to the habitual offender law, the trial court sentenced defendant to state prison for life with the possibility of parole after 28 years.

---

[1] Further undesignated statutory references are to the Penal Code.

1

In 2023, the trial court resentenced defendant pursuant to section 1172.75—striking the single remaining prison prior—but otherwise refused to alter defendant's sentence. Defendant argues the trial court erred when it failed to dismiss his habitual offender qualifying prior convictions as "enhancements" under section 1385, subdivision (c). Defendant further argues the trial court abused its discretion in failing to strike his two habitual offender qualifying priors because defendant fell outside the spirit of the habitual offender sentencing scheme. We shall affirm.

## I. BACKGROUND

The 1992 information alleged defendant committed assault by means of force likely to produce great bodily injury and with a deadly weapon (§ 245, former subd. (a)(1)) and also alleged enhancements for infliction of great bodily injury and elder abuse (§§ 12022.7, 1203.09, subd. (f)). The information further alleged enhancements for three prior convictions under section 667, subdivision (a), one under section 667.5, subdivision (a), and four under section 667.5, subdivision (b). In addition, the information alleged defendant was a habitual offender under section 667.7, subdivision (a) based on a 1982 conviction for forcible oral copulation, and 1968 and 1975 convictions for forcible rape and robbery.

According to the probation report, the 77-year-old victim was playing pool at a minimart in Stockton. When he left the establishment, defendant asked him for a ride and the victim agreed. When the victim stopped the car at a stop sign, defendant hit him on the head and face with a blunt instrument causing him to lose control of the car, run over two parking meters, and run through a fence.

The jury found defendant guilty of assault by means of force likely to produce great bodily injury and with a deadly weapon, and found the enhancements regarding great bodily injury and elder abuse true. The trial court found all of the prior conviction allegations and prison term allegations true.

2

The trial court sentenced defendant to state prison for life with the possibility of parole after 28 years. That term included the upper term of four years for assault (§ 245, former subd. (a)(1)); plus three years for the great bodily injury enhancement (§ 12022.7, subd. (a)); plus five years for each of the three prior serious felony enhancements (§ 667, subd. (a)); plus three years for the prior violent felony conviction (§ 667.5, subd. (a)); plus one year for each of three prison priors (§ 667.5, subd. (b)); plus life with the possibility of parole pursuant to the habitual offender sentencing scheme based upon his 1975 and 1982 convictions (§ 667.7, subd. (a)).[2]

In 2022, the trial court issued an order to hold a resentencing hearing. Defendant separately filed a motion for resentencing under sections 1172.75, 1170, subdivision (a), and 1385. In his brief, defendant argued the prior convictions upon which the habitual criminal sentence was based were enhancements: as that term is used in the amendments to section 1385, subdivision (c), and subject to dismissal. Alternatively, defendant argued the prior convictions that qualified him for the habitual offender sentence should be dismissed under the rubric of *People v. Superior Court (Romero)* (1996) 13 Ca1.4th 497 (*Romero),* and section 1385, subdivision (a). He highlighted the nature of the current convictions, sentence, and his prior convictions. Defense counsel presented defendant's discipline record, which included possible violence or threats of violence, and threatening staff. Counsel also addressed defendant's rehabilitation record, which demonstrated courses he had taken in prison, highlighted his age of 80 years old, the length of time he had served, his diminished physical condition, and the alleged changed circumstances since his original sentencing.

The People responded the trial court should not modify defendant's sentence pursuant to section 1172.75 and section 1385, subdivision (c), because doing so would

---

[2] The parties and trial court agree that after a 1994 appeal, only a single enhancement under section 667.5, subdivision (b) remained imposed as of the 2022 resentencing.

endanger public safety. The People presented the Board of Parole Hearings risk assessments conducted in 2017 and 2023 in support of their position. The 2017 assessment noted defendant was a high risk for violence and despite being eligible for elder parole did not receive it. The 2023 assessment noted he had a higher moderate risk for violence.

At the first hearing on the motion, the trial court stated it had reviewed defendant's and the People's briefing. The trial court said it understood the various mechanisms for resentencing a defendant and understood how old he was. It acknowledged there were a number of items raised by the motion, but it wanted to focus on the question of the potential risk of danger defendant posed. In the hearing, the People conceded the trial court should strike the remaining 667.5, subdivision (b) enhancement, but argued that it should not otherwise change the sentence.

At the continued hearing, the trial court reiterated it had reviewed defendant's papers. The trial court understood it was being asked to resentence defendant in light of sections 1172.75, 1170, and 1385. The trial court discussed defendant's instant conviction and sentence and the prior convictions for kidnapping and assault to commit rape he sought dismissed. The trial court indicated that it would recall the sentence and strike the 667.5, subdivision (b) enhancement. As it discussed the larger question of whether it should alter the sentence in any other way, the court recognized defendant's showing of the factors he believed were favorable to resentencing: his discipline and rehabilitation record, his age, his diminished physical capacity, and physical condition. The trial court then extensively quoted from the two parole assessments. Quoting the 2017 assessment, the trial court stated: " 'Despite his advanced age, [defendant] does not appear to have mellowed over time nor does he recognize the antisociality of his past or desire to make any substantial change in his future.' " The risk assessment stated defendant " 'presents with markedly elevated risk relative to long-term inmates and average risk relative to other parolees.' " The trial court also quoted from the 2023 risk

4

assessment:  " 'Ongoing recent accrual of [rule violation report's] showing an inability to follow rules even when in a highly controlled environment and motivated to release, poor self-awareness, poor acceptance of responsibility for his past crimes, and maladaptive behaviors both in and out of prison, ongoing instability, seems resistant to treatment and to meaningfully accept feedback or to work on his risk factors.  There is evidence of multiple cognitive distortions that have resulted in an inability to self-reflect and a tendency to blame others or flat-out deny culpability.  Seems unwilling to use his past as a learning tool.  There's a lack of evidence that he has dissected his multiple past failed releases to the community to learn from his past pitfalls.  He seems unaware of the challenges he will no doubt face and appears ill-equipped to implement interventions when needed.  No addressment of sexual deviancy.' "  In its discussion on the record, the trial court further rejected defendant's proffer that, if released, defendant would be able to return to a cattle ranch and trucking company he owned despite having been in prison for 30 years.

After it considered all of the relevant factors, the trial court found defendant continued to appear to be an unreasonable risk to public safety.  The trial court struck the remaining one-year prior prison enhancement under section 1172.75 but refused to alter defendant's sentence in any other manner.  Defendant's new aggregate sentence was life imprisonment with the possibility of parole after 22 years.

Defendant filed a timely notice of appeal.

## II.  DISCUSSION

A.    *Section 1385, Subdivision (c)*

Defendant argues the trial court erred in failing to dismiss his two habitual offender qualifying prior convictions because they are "enhancements" subject to dismissal under section 1385, subdivision (c).  We disagree.

Section 1385, subdivision (c)(1), as amended by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1; Senate Bill No. 81), provides:  "Notwithstanding

5

any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Subdivision (c)(2) of section 1385 goes on to list a number of mitigating factors the court should examine if it exercises its discretion to dismiss an enhancement under section 1385, subdivision (c) and requires the trial court to give great weight to those factors when they apply.

The habitual offender sentencing provision was enacted in 1981 and predates the separately enacted three-strikes legislation. (*People v. Jenkins* (1995) 10 Cal.4th 234, 237-238.) "The three strikes scheme does not supersede the habitual offender scheme under section 667.7, but is similar to it in several respects, in that it mandates a life term sentence for a felony conviction if a defendant has suffered two or more prior violent or serious felony convictions." (*Id.* at p. 238, fn. 2.) It "creates a self-contained sentencing scheme for habitual violent offenders, mandating a life sentence upon conviction of a felony involving the infliction of, or use of force likely to produce, great bodily injury (hereafter referred to as a qualifying felony conviction), if the defendant meets the additional requirements for sentencing as a habitual offender." (*Id.* at p. 241.) Thus, the evident purpose of the habitual offender law is "to provide a distinct and more severe sentencing scheme for violent habitual offenders." (*Id.* at p. 243.)

A different panel of this court has previously rejected the argument that the habitual offender law is simply a sentence enhancement. (*People v. Sipe* (1995) 36 Cal.App.4th 468 (*Sipe*).) As explained in *Sipe*, "An enhancement is an additional term of imprisonment added to the base term." (*Id.* at p. 485.) By contrast, the habitual offender law embodied in section 667.7 "provides a separate term of imprisonment for recidivist conduct. It imposes a life sentence for certain offenses where the defendant has two or more prior convictions for such offenses." (*Sipe, supra*, at p. 486.) Thus, "it is not an enhancement." (*Ibid*.) Given that the habitual sentencing law is not an

enhancement, defendant's argument for the dismissal of this "enhancement" under section 1385, subdivision (c) is a nonstarter.

Defendant argues the legislative history underlying Senate Bill No. 81 would be served by applying section 1385, subdivision (c) to his habitual offender qualifying prior convictions. In the context of the three strikes law, another panel of this court held that subdivision (c) of section 1385 does not apply to the dismissal of strikes. (*People v. Burke* (2023) 89 Cal.App.5th 237 (*Burke*).) In *Burke*, this court stated: "Subdivision (c) of section 1385 expressly applies to the dismissal of an 'enhancement.' [Citation.] 'Ordinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning.' [Citation.] The term 'enhancement' has a well-established technical meaning in California law. [Citation.] 'A sentence enhancement is "an additional term of imprisonment added to the base term." ' [Citations.] It is equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense. [Citations.] We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law. [Citation.] The Legislature did not otherwise define the word 'enhancement' in section 1385. Because the statutory language is clear and unambiguous, we follow its plain meaning and do not consider the legislative history cited by defendant. [Citation.] The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement. We therefore conclude that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Id.* at pp. 243-244, fn. omitted.) For the reasons expressed in *Sipe* and *Burke,* we conclude section 1385, subdivision (c) does not apply to the habitual offender sentence imposed here.

Defendant urges us to reconsider *Burke* and apply section 1385, subdivision (c) to the habitual offender law. We decline to do so. The paragraph quoted above completely

7

answers defendant's legislative history argument. The trial court did not err in denying defendant's motion to strike the habitual offender prior convictions and enhancements under section 1385, subdivision (c).[3]

B.      Romero/*Section 1385, Subdivision (a)*

Defendant also argues the "trial court abused its discretion by declining to strike or dismiss [defendant]'s two habitual offender qualifying priors because 'in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects,' [defendant] should have been 'deemed outside the' spirit of the three strikes scheme." He further argues the court's "exclusive focus" on his danger to public safety constitutes an abuse of discretion because no single factor should predominate over the other relevant factors in making that decision. We disagree.

Under section 1385, subdivision (a) the trial court has the power to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony." (*People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*).) The essential question the trial court must answer when deciding whether to dismiss a prior strike allegation is whether the defendant falls outside the spirit of the Three Strikes law. (*Id.* at p. 161.) In making this determination under the Three Strikes law, the trial court considers: (1) the nature and circumstances of the present felony; (2) the nature and circumstances of the prior strike offenses; and (3) the particulars of the defendant's background, character, and prospects for the future. (*Ibid.*) Given the similarities between the habitual offender law and the Three Strikes law (see

_____

[3] Because section 1385, subdivision (c) does not apply here, we have no reason to discuss defendant's arguments that the mitigating factor in section 1385, subdivision (c)(2)(C) is present here, whether the trial court erred in its discussion of defendant's danger to public safety under this section, or whether the trial court's failure to apply this inapplicable provision affected defendant's due process rights.

*People v. Jenkins, supra*, 10 Cal.4th at p. 238, fn. 2), the same considerations are applicable to the determination as to whether defendant falls outside the spirit of the habitual offender law.

We review the trial court's decision declining to dismiss a prior strike allegation for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) The " ' "burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.) "Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Id.* at p. 378.)

Here, the record demonstrates the trial court considered the relevant factors throughout two separate hearings. The trial court understood the question presented and the relevant law. The trial court stated on the record twice it had reviewed the moving and responding papers—the moving papers detailed the nature of the inquiry under *Romero* and section 1385, subdivision (a). The court identified the question before it was whether it should resentence defendant based on section 1385. Moreover, at the first hearing, the court acknowledged the many points raised by the motion, but that it was specifically interested at that hearing on the parties' positions on the question of

9

defendant's risk of future violence. This query is especially relevant to the particulars of the defendant's background, character, and prospects for the future.

When the parties returned to court two weeks later, the record discloses the trial court considered all of the relevant factors enumerated by *Williams*. It referenced defense counsel's presentation of defendant's discipline record, his rehabilitation record, and factors related to the potential for reduced future violence in terms of defendant's age, his time in custody, and his diminished physical condition. The trial court further acknowledged defense counsel presented its request under the *Romero* rubric discussing the nature of defendant's prior convictions and his incarceration.

The trial court examined defendant's prior convictions for kidnapping and assault to commit rape. The court further considered defendant's prospects for the future when it disclosed and rejected defendant's stated plan that, despite having been in prison for 30 years, he owns a cattle ranch and trucking business in Salinas that he thought he could return to upon his release.

Based on a consideration of all the circumstances, the trial court was swayed by the 2017 and 2023 parole assessment reports presented by the People that identified the risk to the public defendant would pose if the trial court were to dismiss the two qualifying convictions. While the trial court did not use the precise terms from the *Williams* court's analysis, the implicit finding subsumed in the trial court's denial of defendant's application to strike his prior habitual offender convictions was that defendant was not outside the spirit of the habitual offender law. This was not an abuse of discretion.

10

## III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

MAURO, Acting P. J.

/S/

DUARTE, J.

11