Filed 9/23/21 P. v. Fajardo CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIA DEL CARMEN GRANADOS FAJARDO,<br><br>    Defendant and Appellant. | 2d Crim. No. B301880<br>(Super. Ct. No. F491809)<br>(San Luis Obispo County) |

Maria Del Carmen Granados Fajardo appeals an order denying her petition for resentencing filed under Penal Code section 1170.95 following her prior conviction of second degree murder.[1]  (§ 187, subd. (a).)  The trial court did not issue an order to show cause for an evidentiary hearing.  We conclude, among other things, that the trial court did not err by denying the petition.  We affirm.

---

[1] All statutory references are to the Penal Code.

## FACTS

Victor Sanchez was Fajardo's former boyfriend. In 2012, Fajardo asked David Hernandez to beat up Sanchez and she offered to pay him for this plan. Crystal Garner and Joseph Villareal became involved in this plot. They planned to break Sanchez's leg and injure his face. (*People v. Fajardo* (June 30, 2016, B261612) [nonpub. opn.].)

Fajardo said she would not pay unless the assailants provided proof of the assault. The assailants planned to take Sanchez's wallet and cell phone as proof.

Pursuant to the plan, Garner invited Sanchez to meet her at a bar. Sanchez accepted the invitation. Garner and Sanchez left the bar in Sanchez's car, with Garner driving. Hernandez and Villareal followed in Hernandez's car. Garner pulled off the road and Hernandez used his car to block Sanchez's car. (*People v. Fajardo*, *supra*, B261612.)

Villareal got out of Hernandez's car and hit the top of Sanchez's car with a crowbar. Villareal screamed at Sanchez to get out of the car. He pulled Sanchez out of the car and struck him numerous times with the crowbar. Garner screamed for Villareal to get Sanchez's wallet and cell phone. Sanchez tried to hand over his wallet, but Villareal continued to beat him. Garner saw a light moving in their direction. She took Sanchez's wallet and cell phone, and she and Villareal got into Hernandez's car and left Sanchez at the scene. (*People v. Fajardo*, *supra*, B261612.)

Hernandez drove to Fajardo's house and delivered Sanchez's wallet and cell phone. Fajardo gave Hernandez $6,000. Hernandez gave Villareal and Garner $1,000.

About two weeks after the assault, Fajardo visited Hernandez at his house. She complained that the assault on Sanchez was inadequate because the agreement had been to break Sanchez's leg. Fajardo offered Hernandez $25,000 to "take [Sanchez] out." Hernandez hired three men to shoot Sanchez in the kneecap. Sanchez was shot and killed at his home. (*People v. Fajardo*, *supra*, B261612.)

Fajardo was convicted by a jury of second degree murder (§ 187, subd. (a)), robbery (§ 211), and assault with a deadly weapon (§ 245, subd. (a)(1)). She was sentenced to an aggregate prison term of 21 years to life. On June 30, 2016, we affirmed the conviction. (*People v. Fajardo*, *supra*, B261612.)

On February 8, 2019, Fajardo filed a petition for resentencing under section 1170.95. She checked a box on the form petition that said, "I was convicted of 2nd degree murder under the natural and probable consequences doctrine or under the 2nd degree felony murder doctrine and I could not now be convicted of murder because of changes to Penal Code § 188, effective January 1, 2019." She did not state any evidentiary facts or cite to any portions of the record.

The People filed an opposition claiming Fajardo did not fall within section 1170.95 because she was a major participant in the underlying felony and acted with reckless indifference to human life. She "abetted, counseled, [and] commanded" the actual killer and acted with malice. (Emphasis omitted.)

The trial court denied the petition and did not issue an order to show cause for an evidentiary hearing. It found, "Fajardo was a principal in the commission of the crime. Consequently, I don't believe that she would be entitled to relief under [section] 1170.95. I'm further making a finding that she

3

was a principal that acted with malice aforethought based on the pleadings. So I am going to deny the petition."

DISCUSSION

*Denying the Section 1170.95 Petition*

Fajardo and the People contend the trial court erred by prematurely denying her section 1170.95 petition without issuing an order to show cause and conducting an evidentiary hearing. We disagree.

The origin of section 1170.95 was the Governor's signing of Senate Bill No. 1437 in 2018. Senate Bill No. 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with intent to kill, or *was not a major participant in the underlying felony who acted with reckless indifference to human life*." (Stats. 2018, ch. 1015, § 1, subd. (f), italics added; *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417.)

A defendant convicted of murder may file a petition under section 1170.95 alleging he or she "could not be convicted of first or second degree murder" because of changes to the law required by Senate Bill No. 1437. (*People v. Gutierrez-Salazar*, *supra*, 38 Cal.App.5th at p. 417.) "A trial court receiving a petition under section 1170.95 'shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.' (§ 1170.95, subd. (c).)" (*Ibid*.) "If the petitioner has made such a showing, the trial court 'shall issue an order to show cause.' " (*Ibid*.) The trial court must then hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner. (*Ibid*.)

4

At that hearing the People's burden of proof is to show the petitioner is ineligible for section 1170.95 relief. (§ 1170.95, subd. (d)(3).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*)

There are two stages involved in a section 1170.95 petition. If a prima facie showing is made for relief in the first stage, the trial court proceeds to the second stage and issues an order to show cause and the case proceeds to an evidentiary hearing. Where the prima facie showing is not made in the first stage, the court may deny the petition.

Many courts have held that where the petitioner is obviously ineligible for section 1170.95 relief, the trial court may summarily dismiss the petition. (*People v. Cervantes* (2020) 44 Cal.App.5th 884, 887; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330, review granted Mar. 18, 2020, S260493; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410.)

Here the parties have not shown trial court error by the decision not to issue an order to show cause for a second stage section 1170.95 evidentiary hearing.

Senate Bill No. 1437 did not change the law for the benefit of defendants convicted of murder who are major participants in the underlying felony who acted with reckless indifference to human life. (*People v. Gutierrez-Salazar*, *supra*, 38 Cal.App.5th at pp. 416-417.) Defendants convicted of murder who are not the actual killers but whose actions show intent to kill the victim are not entitled to section 1170.95 relief. (*People v. Cooper* (2020) 54 Cal.App.5th 106, 112-113, review granted Nov. 10, 2020, S264684.) Defendants who commit a "murder for hire" by paying

5

someone to kill a victim are also not eligible.  (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1162; *id*. at p. 1167.)

A defendant convicted of murder under the natural and probable consequences doctrine must make a prima facie showing that he or she could not now be convicted of murder under current law in order to obtain section 1170.95 relief.  (*People v. Garcia* (2020) 57 Cal.App.5th 100, 105, 114-115, review granted Feb. 10, 2021, S265692.)

Fajardo did not make a prima facie showing.  The facts cited in our appellate decision show that Fajardo solicited the crime that ultimately caused Sanchez's death.  She twice solicited and directed the violent assault on him.  She acted with malice and was the major participant in this plan that resulted in his death.  She acted with a reckless indifference to human life.  Without Fajardo's plan, Sanchez would not have been the target of the crime that caused his death.  It is undisputed that Fajardo *offered Hernandez $25,000* to "*take [Sanchez] out*."  (*People v. Fajardo*, *supra*, B261612.)  The People in their opposition to the section 1170.95 petition cited to facts in the record to show she paid the murderers after they killed Sanchez.

Fajardo's conduct falls outside the relief provisions in Senate Bill No. 1437.  (*People v. Gutierrez-Salazar*, *supra*, 38 Cal.App.5th at pp. 416-417; see also *People v. Garcia*, *supra*, 57 Cal.App.5th at pp. 105, 114.)

*The Garcia Decision*

In *People v. Garcia*, the defendant was convicted of second degree murder in 1998 "under the natural and probable consequences doctrine."  (*People v. Garcia*, *supra*, 57 Cal.App.5th at p. 105.)  During a gang fight, Garcia told another gang member to stick the victim with a knife.  That other gang

6

member killed the victim. Garcia filed a section 1170.95 petition. He alleged that 1) he did not act with intent to kill or abet the actual killer; 2) he was not a major participant in the murder; 3) he did not act with reckless indifference to human life; and 4) he could not presently be convicted of murder. The trial court denied his section 1170.95 petition on the ground that Garcia had failed to make a prima facie showing for the issuance of an order to show cause. We affirmed and held, "Appellant's allegations conflict with the evidence presented at trial. As we shall explain, the Legislature surely did not intend that appellant would be entitled to an evidentiary hearing to retry the underlying criminal case against him." (*Garcia*, at p. 105.)

We said, "Section 1170.95 clearly and unambiguously requires a prima facie showing that the petitioner '*could not* be convicted of . . . second degree murder because of changes to Section 188 . . . .' " (*People v. Garcia*, *supra*, 57 Cal.App.5th at p. 114.) "In view of the evidence that appellant directed [the actual killer] to 'stick' the victim with a knife, as a matter of law appellant could be convicted of second degree murder as a direct aider and abettor despite the changes to section 188." (*Ibid*.) "We affirm the order denying his petition." (*Id*. at p. 105.)

Fajardo's case is similar to *Garcia*. But Fajardo, in a more calculated and deliberate fashion, initiated the plan to attack the victim, and on more than one occasion offered money to solicit the attacks. Garcia asked an associate to use a knife; Fajardo paid associates to "take [the targeted victim] out." Here, as in *Garcia*, Fajardo "could be convicted of second degree murder as a direct aider and abettor despite the changes" required by Senate Bill No. 1437. (*People v. Garcia*, *supra*, 57 Cal.App.5th at p. 114.)

7

## Other Factors

There are other relevant factors that support the finding that Fajardo was a major participant who acted with reckless indifference to human life. First, the plan to attack was Fajardo's "brainchild." (*People v. Douglas* (2020) 56 Cal.App.5th 1, 10.) Second, as the People note, Fajardo was the "ringleader." "[A] ringleader is a major participant." (*People v. Williams* (2015) 61 Cal.4th 1244, 1281.) Her participation was significant because she both directed and paid to facilitate the attacks on her victim. Without her participation, there would not have been an attack on Sanchez. Third, the use of violence was not a surprise, but rather the *intended* result. (*Douglas*, at pp. 10-11.) Fajardo specifically hired people to "take [Sanchez] out."

Defendants convicted of murder may use various factors to support their claims for section 1170.95 relief when their participation involves "minor culpability." For example, "the getaway driver who *did not know* how dangerous the plan was," or "the robbery mastermind who *took special steps to avoid violence and gunplay*." (*People v. Douglas*, *supra*, 56 Cal.App.5th at p. 9, italics added.) But such factors do not apply to Fajardo. She knew the plan because she created it, and she specifically took steps to cause violence to the victim.

In *In re Scoggins* (2020) 9 Cal.5th 667, our Supreme Court held there was no ground to find reckless indifference to human life in a case of a defendant who planned an unarmed assault and robbery where one of his associates at the crime scene unexpectedly used a gun and shot a victim to death. In making this determination, the court considered several factors. It noted the defendant did not "know that a gun would be used during the felony." (*Id*. at p. 677.) He planned the assault and robbery of

8

the victim "to be unarmed." (*Ibid*.)  The defendant had "no reason to suspect that his accomplices were armed." (*Id*. at p. 679.)  The defendant did not know his associates were likely to use lethal force.  (*Id*. at p. 681.)  These favorable *Scoggins* factors do not apply here.  Fajardo paid money to "take [Sanchez] out."

When defendants plan crimes, a relevant factor is whether the plan has "a particularly high risk of violence." (*In re McDowell* (2020) 55 Cal.App.5th 999, 1013.)  Here the plan involved *more* than the risk of violence, it *required violence* to be inflicted.  Did the defendant take "efforts to minimize the risks of the violence [during the felony]"? (*People v. Clark* (2016) 63 Cal.4th 522, 621.)  Here, the opposite.  After the first attack, Fajardo paid more money to *increase* the risk of violence for her victim.

A relevant question is whether the defendant was aware "of particular dangers posed by the nature of the crime." (*People v. Banks* (2015) 61 Cal.4th 788, 803.)  Here the crime targeted a specific victim with violence and Fajardo's direction to "take [him] out."  Other *Banks* factors are not favorable for Fajardo.  For example, what "awareness did the defendant have" regarding the "past experience or conduct of the other participants"? (*Ibid*.)  Fajardo had used Hernandez for the specific purpose of violently attacking Sanchez on two occasions.  Finally, "[w]hat did the defendant do after lethal force was used"? (*Ibid*.)  Fajardo paid the murderers as required by her plan.

*The Hearing on the Petition*

The People claim the trial court erred by making its findings at a first stage hearing.  They contend it should have waited until a second stage section 1170.95 hearing to make

9

findings. But given the facts of this case, the distinction is meaningless.

This was technically a first stage section 1170.95 proceeding because the trial court did not issue an order to show cause. But the nature of this proceeding had elements akin to a second stage evidentiary proceeding. The People's opposition to the petition included a request for the court to take judicial notice of the "charging document(s) and court record(s) contained in the court file." They included citations to facts from the record of conviction and citations to the reporter's transcript of the trial testimony. They cited to trial transcripts to show that after the killing Fajardo paid the murders who killed Sanchez. The People set forth a complete statement of facts from the record of conviction to support a murder conviction under current law.

Fajardo's counsel filed a 10-page brief in response. But there was no cite to evidence to contest the facts in the record of conviction. There was no showing that the facts cited by the People from the trial transcripts were incorrect. Instead, Fajardo's counsel agreed that the facts the People cited from the record of conviction "*set[] forth the factual summary of the case.*" (Italics added.) Because of that stipulation, Fajardo has not shown that the trial court lacked the authority to make its rulings *given this undisputed factual record.*

At the hearing the trial court said, "I've also reviewed the unpublished opinion by the Second Appellate District, Division Six, filed on June 30th, 2016, regarding the facts that the Court relied upon in determining that the judgment would be affirmed." Fajardo's counsel stated, "I'm prepared to *submit it*" on the "*pleadings and the record that the court has recited for the record.*" (Italics added.) In his brief Fajardo's counsel said the

court may rely on the record of conviction and the appellate opinion is part of the "record of conviction." At the hearing Fajardo's counsel made no request to introduce evidence to respond to the People's evidence, and he made no offer of proof. (*People v. Perez* (2020) 54 Cal.App.5th 896, 907, review granted Dec. 9, 2020, S265254 [denial of petition upheld; defendant did not make an offer of proof of the evidence he could provide].) At the hearing Fajardo's counsel did not cite any facts from the record of conviction, or otherwise, to make a prima facie showing for section 1170.95 relief.

The trial court could reasonably find that the People had met the same burden they would need to meet at a second stage hearing to show section 1170.95 ineligibility, the defense did not make a prima facie showing, and consequently holding another hearing would not change the result.

Moreover, the suggestion the trial court acted prematurely is refuted by the record which shows it was patient and afforded Fajardo an extensive opportunity to present her case. This was far from a summary proceeding. Fajardo filed her petition on February 8, 2019. The court held a hearing on Fajardo's petition on February 26, 2019, and appointed counsel for her. The People filed a motion to dismiss the petition on February 27, 2019, where they raised the argument that Senate Bill No. 1437 was unconstitutional.

The trial court held hearings on the constitutional issue on March 27, April 15, and April 29. After resolving the constitutional issue against the People, the court held a June 10 hearing to set a briefing schedule on the merits of Fajardo's petition. At a July 29 hearing, the court granted a request for a continuance sought by Fajardo's counsel. At an August 26

11

hearing, the court granted another continuance requested by Fajardo's counsel. The hearing on the petition took place on September 18. More than seven months elapsed between the filing of the petition and the hearing. This gave Fajardo ample time to prepare for the September 18 hearing.

*Other Issues*

The parties suggest that Fajardo's check mark on a conclusory allegation in her section 1170.95 petition form, by itself, was sufficient to require the issuance of an order to show cause for a second stage evidentiary hearing. They suggest the trial court may not look to the record of conviction. Our Supreme Court disagrees. (*People v. Lewis* (2021) 11 Cal.5th 952.)

The trial court may consider the record of conviction to determine whether the defendant "qualifies under the sentencing scheme at issue." (*People v. Woodell* (1998) 17 Cal.4th 448, 457.) In addition to stating the statutory requirements of a section 1170.95 petition, the defendant must also make a sufficient prima facie showing for relief. (*Garcia*, at p. 115.) That did not occur here. Moreover, the parties' theory would undermine the goal and operation of section 1170.95.

In interpreting a statutory scheme such as section 1170.95, we must "consider the statute read as a whole" and "avoid an interpretation that would lead to absurd consequences." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.) If simply checking a box on the section 1170.95 form petition automatically entitles the petitioner to a second stage evidentiary hearing, in *every case there will be a second stage evidentiary hearing*. The Legislature could not have intended that result. It would leave no role for a trial court to determine a prima facie case. It would mean the court could have the clerks check to see if a box was checked on

12

the petition form, and then automatically schedule a second stage evidentiary hearing without the need of any judicial determination.  Such a result would render the first stage of the section 1170.95 procedure to be meaningless.

In *People v. Garcia, supra,* 57 Cal.App.5th at page 118, we held, "In determining whether a petitioner has made a prima facie showing of entitlement to relief under section 1170.95, the courts *should not ignore the evidence in the record of conviction* that shows the petitioner is ineligible for relief."  We said, "[I]n determining whether the petitioner has made a prima facie showing of entitlement to relief, the court may consider the record of conviction."  (*Id.* at p. 111.)  " 'A court of appeal opinion . . . is part of the appellant's record of conviction.' "  (*Ibid.*)

The dissent contends we are ignoring *People v. Lewis.*  But in *Lewis* the court said, "The record of conviction will necessarily inform the trial court's *prima facie inquiry* under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly *meritless*."  (*People v. Lewis, supra,* 11 Cal.5th at p. 971, italics added.)  There is a distinction between judicial fact-finding and a consideration of the facts in the record of conviction.  The dissent conflates the two.  The facts we cite from the record here are uncontradicted.

Some of the dissent's analysis could apply to a typical section 1170.95 first stage case.  But this is not the typical case.  The dissent cites *People v. Rivera* (2021) 62 Cal.App.5th 217, 230, review granted June 9, 2021, S268405, stating, " ' "[A]bsent a record of conviction that *conclusively establishes* that the petitioner engaged in the requisite acts and had the requisite intent [for a murder conviction under current law], the trial court should not question [the petitioner's] *evidence*" ' in the first stage

13

review." (Italics added.) But, as shown by the record of this section 1170.95 proceeding, Fajardo did not present *any evidence* and the record of conviction *conclusively established* guilt based on *uncontradicted* and *stipulated* facts.

The dissent claims the trial court erred because this petition was denied without a second stage evidentiary hearing. But this assumes that Fajardo made the required prima facie showing for section 1170.95 relief. The unique procedural facts of this case resulted in an *extended* proceeding involving multiple hearings over *several months* and extensive briefing. Fajardo had *seven months* to gather evidence to prepare a prima facie showing for section 1170.95 relief.

At the final section 1170.95 hearing, Fajardo's counsel did not make an offer of proof, did not state defensive facts, did not make a prima facie showing, and did not object to the statement of facts the People relied on from the record of conviction. *Instead*, her counsel stipulated that those facts constituted the "factual summary of the case." The trial court is not obligated to order a hearing to find facts to which the parties have stipulated.

Moreover, one of those uncontested facts, which the dissent fails to highlight, was that Fajardo paid the murderers after the murder. The dissent has not shown how the Legislature could have intended that a murder for hire could fall within any of the eligible categories for section 1170.95 relief.

The dissent claims the substantial evidence standard articulated for section 1170.95 review in *People v. Garcia, supra,* 57 Cal.App.5th 100 is incorrect and only the *Rivera* standard should apply. But assuming arguendo that the dissent is correct, that would not change the result in this case. The issue here is

14

not merely the presence of substantial evidence, it is the presence of a record of uncontradicted evidence.

DISPOSITION

The order denying the section 1170.95 petition is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

I concur:

YEGAN, J.

15

TANGEMAN, J., Dissenting:

I dissent. I agree with appellant and the Attorney General that the result reached by the majority is wrong. Where, as here, a petition is facially sufficient to set forth a petitioner's entitlement to relief, the court "*shall* issue an order to show cause." (Pen. Code,[2] § 1170.95, subd. (c), italics added.) Our Supreme Court recently held that subdivision (c) means what it says—that "shall" imposes a mandatory duty. (*People v. Lewis* (2021) 11 Cal.5th 952, 963 (*Lewis*).) But that wasn't done here.

Appellant, with the assistance of counsel, properly completed her petition for resentencing. Nothing more was required at this first stage. Her petition being facially sufficient, appellant was not required to "state . . . evidentiary facts or cite to . . . portions of the record" in her petition, as suggested by the majority (maj. opn. *ante*, at p. 3). (*Lewis*, *supra*, 11 Cal.5th at p. 971.) Instead, it was incumbent upon the trial court to issue an order to show cause.

The pleadings and jury instructions allowed the jury to return a guilty verdict against appellant under alternative theories of a direct aider and abettor to murder *or* pursuant to the natural and probable consequences doctrine. "Because the jury returned a general verdict, we cannot exclude the possibility that [appellant's] jury found [appellant guilty of murder] based solely on a theory that [s]he aided and abetted [assault] and that [the victim's] death occurred during the commission of that offense." (*People v. Secrease* (2021) 63 Cal.App.5th 231, 246, review granted June 30, 2021, S268862; *People v. Drayton* (2020) 47 Cal.App.5th 965, 968 (*Drayton*).)

---

[2] Undesignated statutory references are to the Penal Code.

Accordingly, we cannot presume, as the majority does here, that appellant shared her confederates' "murderous intent." (*Secrease*, at p. 247.) Doing so without issuing an order to show cause and conducting an evidentiary hearing constitutes impermissible factfinding, which is strictly prohibited at the first stage review. (*People v. Clayton* (2021) 66 Cal.App.5th 145, 153 (*Clayton*).) While the trial court may consider the underlying record of conviction, it must accept petitioner's factual allegations as true unless the record affirmatively and unequivocally shows that petitioner is ineligible for relief. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-972.) Most importantly here, "[i]n reviewing any part of the record of conviction [for purposes of determining eligibility], a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id*. at p. 972.)

Here, the record of conviction establishes only that appellant was found guilty of murder as a natural and probable consequence of her direction to (and payment for) others to commit a felonious assault on the victim. Under prior law, this was sufficient to support a murder conviction. (*People v. Gentile* (2020) 10 Cal.5th 830, 847.) But Senate Bill No. 1437 (2017-2018 Reg. Sess.) changed the law by abolishing this theory of culpability for a murder conviction. (*Gentile*, at p. 849.) Now, "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) In other words, "Senate Bill 1437 bars a conviction for second degree murder under the natural and probable consequences theory." (*Gentile*, at p. 839.)

2

If a facially sufficient petition is filed, as was done here, our trial courts must "'take[] petitioner's factual allegations as true and make[] a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her allegations were proved. If so, the court must issue an order to show cause.'" [Citations.]" (*Lewis, supra,* 11 Cal.5th at p. 971.) Thus, "'absent a record of conviction that *conclusively establishes* that the petitioner engaged in the requisite acts and had the requisite intent [for a murder conviction under current law], the trial court should not question [the petitioner's] evidence'" in the first stage review. (*People v. Rivera* (2021) 62 Cal.App.5th 217, 230, review granted June 9, 2021, S268405; *Drayton, supra,* 47 Cal.App.5th at p. 968.) But that is precisely what the trial court did here.

The majority compounds this error when it concludes that appellant did not make a prima facie case because "substantial evidence supports a murder conviction based on a direct aiding and abetting theory" (citing *People v. Garcia* (2020) 57 Cal.App.5th 100, 115, review granted Feb. 10, 2021, S265692). The proper test is not whether substantial evidence exists in the record such "that a rational jury *could* still find the defendant guilty of murder on a still-valid theory" (*People v. Fortman* (2021) 64 Cal.App.5th 217, 224, review granted July 21, 2021, S269228), but rather whether the record of conviction "'*conclusively establishes* that the petitioner engaged in the requisite acts and had the requisite intent'" for murder culpability under current law. (*Rivera,* at p. 230.)[3]

---

[3] In this regard, I "join the growing chorus that requires an independent finding by the trial court." (*Fortman, supra,* 64 Cal.App.5th at p. 221.)

Here, both parties acknowledge that appellant's petition "satisfied the requirements of section 1170.95 . . . and stated a prima facie case for relief." (*Clayton*, *supra*, 66 Cal.App.5th at p. 154.) They further acknowledge that "[t]he record does not establish ineligibility as a matter of law, and the [trial] court should have issued an order to show cause and followed the procedures mandated by section 1170.95, subdivision (d). Instead, the court engaged in judicial factfinding based on its analysis of the evidence." (*Ibid.*) This was error, as both parties correctly agree. (*Ibid.*)

Instead of recognizing this clear error, the majority itself engages in factfinding on appeal, relying upon evidence that appellant paid others to "take [the victim] out" as indisputable proof that she intended that her victim be killed. It also acknowledges that in response to appellant's express instruction to "take [him] out," her confederate hired three men "to shoot [the victim] in the kneecap." (Maj. opn. *ante*, at p. 3.) Although these pieces of evidence support inconsistent conclusions about appellant's true intent, the majority engages in its own factfinding (which we as a reviewing court are prohibited from doing) to conclude that the evidence of her statement ("to take [him] out") outweighs the evidence of the actual plan (to "kneecap" the victim). This weighing of evidence on appeal is improper; it is an elementary principle of appellate practice that we do not weigh the evidence or make factual findings as a reviewing court.

Finally, I disagree with the majority's statements that, while "[t]his was technically a first stage" review, the "nature of this proceeding had elements akin to a second stage evidentiary proceeding" (maj. opn *ante*, p. 10). One need look no further than

4

the trial court's ruling, which found appellant ineligible as "a principal that acted with malice aforethought *based on the pleadings*" (italics added), to confirm that appellant has not yet had the evidentiary hearing required by law.

Because the record of conviction does not "conclusively establish[]" that appellant was convicted of murder-for-hire, she is entitled to an evidentiary hearing. I would therefore reverse and remand for such a hearing, as both parties to this appeal request.

NOT TO BE PUBLISHED.

TANGEMAN, J.

5

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.