Filed 6/27/25  P. v. Holdsworth CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>STEVEN JAMES HOLDSWORTH,<br><br>        Defendant and Appellant. | A167902<br><br>(Contra Costa County<br>Super. Ct. Nos. 940577-0,<br>940625-7, 950160-2, 951238-5) |

Steven James Holdsworth was convicted by a jury in 1994 of numerous offenses committed while attempting to evade arrest.  He was sentenced as a habitual offender (Pen. Code, § 667.7, subd. (a))[1] with two prior serious felony conviction enhancements (§ 667, subd. (a)) and four prior prison term enhancements (former § 667.5, subd. (b))[2] to 35 years to life in prison, which was reduced on direct appeal to 34 years and four months to life.

In 2023, Holdsworth sought recall and resentencing under section 1172.75.  After holding a hearing, the trial court struck the prior prison term and prior serious felony enhancements and resentenced Holdsworth to 20

---

[1] All further undesignated statutory references are to the Penal Code.

[2] Statutes 1994, chapter 1188, section 6, pages 7184–7185.

years and four months to life.  On appeal, Holdsworth raises numerous challenges to his sentence and convictions.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The below summary is based in part on this court's opinion in Holdsworth's direct appeal (*People v. Holdsworth* (Feb. 11, 1998, A069164) [nonpub. opn.] (*Holdsworth I*)), the order denying Holdsworth's petition for writ of habeas corpus (*In re Holdsworth* (April 8, 2003, A100884) [nonpub. order] (*Holdsworth II*)), and the records from those cases.[3]

The summary is limited to those facts relevant to the issues on appeal.[4]

*Trial Proceedings*

In 1994, Holdsworth led police on a high-speed car chase as he attempted to evade arrest.  During the chase, he fired a pistol, attempted to fire a short-barreled shotgun, and brandished the shotgun repeatedly at pursuing officers, but no bullets made contact.  He eventually crashed into a ditch and was arrested.

Holdsworth was charged by information with two counts of attempted murder (§§ 187, 664; counts one and two); attempted premeditated murder (§§ 187, 664; count three); five counts of assault with a firearm on a peace officer (§ 245, subd. (d)(1); counts four through eight); brandishing a firearm to resist arrest (§ 417.8; count nine); evading a peace officer while driving in willful disregard of others (Veh. Code, § 2800.2; count 10); and receiving stolen property (§ 496, subd. (a); count 11).

---

[3] By orders dated March 28, 2024, and July 26, 2024, we granted Holdsworth's unopposed requests for judicial notice or augmentation of the records, briefing, opinions, and orders in *Holdsworth I* and *Holdsworth II*.

[4] Relatedly, as this appeal only concerns issues related to case No. 940625-7, we do not discuss Holdsworth's other cases reflected on the docket (case Nos. 940577-0, 950160-2, and 951238-5).

1

The information contained a habitual offender life sentence allegation under section 667.7, subdivision (a) identifying two supporting prior prison terms for: a 1978 robbery conviction and a 1986 conviction for assault with a deadly weapon.  The information alleged four 1-year prior prison term enhancements under former section 667.5, subdivision (b), including for a 1978 conviction for assault with a deadly weapon (§ 245).  It also alleged two 5-year prior serious felony enhancements (§ 667, subd. (a)) and, for counts one through eight, firearm use enhancements (§ 12022.5, subd. (a)).

Following trial, the jury convicted Holdsworth as charged on counts one, two, four, five, nine, 10, and 11.  On count three, the jury convicted him of the lesser included offense of attempted murder.  On counts six through eight, it convicted him of the lesser related offense of brandishing a firearm in the presence of a peace officer (§ 417, subd. (c)).  The jury found the firearm enhancements true on counts one through five.

Holdsworth waived jury trial on the habitual offender, prior prison term, and prior serious felony allegations.  After a bench trial, the trial court found those allegations true.

In 1995, the court sentenced Holdsworth to a total term of 35 years to life in prison.[5]  As relevant here, the court imposed (1) a total determinate

_____

[5] The original sentence imposed was "based on the following consecutive terms: (1) on count one, the middle term of seven years for attempted murder, plus the midterm of four years for the firearm personal use enhancement; (2) on counts two and three, one-third of each middle term of seven years for attempted murder with the firearm use enhancement stayed, or a total of four years, eight months; (3) on count five, one-third the middle term of six years for assault with a firearm on a police officer with the firearm use enhancement stayed, or a total of two years; (4) on counts six through eight, one-third the two-year middle term for each count of brandishing a firearm in the presence of a police officer, or a total of two years; (5) on counts ten and eleven, one-third the middle terms of two years

2

sentence of 35 years, including one-year terms for each of the four prior prison term enhancements (former § 667.5, subd. (b)) and five-year terms for each of the two prior serious felony enhancements (§ 667, subd. (a)), and (2) an indeterminate term of life with the possibility of parole for the habitual offender finding (§ 667.7, subd. (a)(1)).

*Direct Appeal and Habeas Corpus Proceedings*

On direct appeal, this court modified the judgment to stay the sentence on count 10 pursuant to section 654, which reduced the total sentence to 34 years and four months to life, but affirmed the judgment in all other respects. (*Holdsworth I*, *supra*, A069164.)

In 2002, Holdsworth filed a petition for writ of habeas corpus in this court challenging his section 667.7 life sentence. (*Holdsworth II*, *supra*, A100884.) In 2003, this court denied the petition. (*Ibid.*)

*Section 1172.75 Resentencing Proceedings*

In 2023, Holdsworth moved for recall and resentencing under section 1172.75 as his prior prison term enhancements (former § 667.5, subd. (b)) were no longer valid based on changes in sentencing law. In addition to striking those enhancements, he requested the court strike his section 667.7

---

for evading a police officer while driving in willful disregard of others and receiving stolen property, respectively, or a total of one year, four months; (6) five-year terms for each of the two prior serious felony convictions under section 667, subdivision (a), or a total of ten years; (7) one-year terms for each of the four prior prison terms under section 667.5, subdivision (b), or a total of four years; and (8) life with the possibility of parole for the habitual offender enhancement under section 667.7, subdivision (a)(1). To run concurrently with the sentence imposed on count one, the trial court imposed: (1) on count four, a middle term of six years for assault with a firearm on a police officer, with the firearm use enhancement stayed; and (2) on count nine, the middle term of three years for brandishing a deadly weapon to resist arrest. The trial court stayed both of these concurrent terms on counts four and nine pursuant to section 654." (*Holdsworth I*, *supra*, A069164.)

habitual offender life sentence, as well as his five-year prior serious felony enhancements under section 667, subdivision (a), pursuant to section 1385. He asked the court to impose a determinate sentence of 28 years and four months in prison.

The court held a resentencing hearing in May 2023. Inspector David Ishikawa, an officer involved in the car chase, addressed the court. This case affected him deeply as it was the most impactful situation in his 34-year law enforcement career. He recounted pursuing Holdsworth's car while being targeted by gunshots and thinking he was going to die when he saw Holdsworth point a shotgun at him. He later learned the reason he was not shot was because the shotgun jammed. Holdsworth also addressed the court, taking accountability for his actions and expressing remorse to the victims and others affected by the case. A friend spoke in his support.

The prosecution agreed Holdsworth's prior prison term and prior serious felony enhancements should be stricken. However, it urged the court to maintain the habitual offender life sentence under section 667.7 and allow the Board of Parole Hearings (BPH) to determine when or whether to release Holdsworth, claiming the BPH was best suited to make that decision. The prosecution cited public safety concerns based on the offense conduct and Holdsworth's significant criminal history that included multiple violent assaults.

Defense counsel argued the court should consider various factors including Holdsworth's age-related disabilities and other health issues, successful programming in prison, difficult childhood, history of methamphetamine addiction that contributed to the offense conduct, remorse for his actions, and support from family and friends. Counsel contended it

4

was not solely up to the BPH to make a release determination, asserting the court was also vested with the power to strike Holdsworth's life sentence.

The court found Holdsworth's sentence was subject to recall. It noted it was tasked with applying ameliorative sentencing laws and taking into account the entirety of Holdsworth's history, including but not limited to his efforts to take advantage of schooling and programming while incarcerated. However, the court also noted the section 667.7 habitual offender statute was not among the ameliorative changes in sentencing law enacted since his sentencing.

At the conclusion of the hearing, the court struck Holdsworth's four prior prison term enhancements (former § 667.5, subd. (b)) and two serious felony enhancements (§ 667, subd. (a)). While the court appreciated what Holdsworth had done while incarcerated, it declined to strike the habitual offender life sentence (§ 667.7, subd. (a)(1)) "[i]n light of all of the factors" presented to the court. Accordingly, the court resentenced Holdsworth to 20 years and 4 months to life. Holdsworth appealed.

## DISCUSSION

Holdsworth raises various arguments on appeal related to his sentence and convictions. First, he presents numerous claims related to his section 667.7 habitual offender life sentence. Second, he asserts two of his sentences for brandishing a firearm must be stayed. Third, he seeks to challenge one of his brandishing convictions. We are not persuaded.

We begin with a summary of the section 1172.75 resentencing framework. Subdivision (a) of section 1172.75 renders legally invalid any prior prison term enhancement under former section 667.5, subdivision (b) imposed before 2020, except where the prior term was for a sexually violent

5

offense.[6]  (*People v. Coddington* (2023) 96 Cal.App.5th 562, 567 (*Coddington*).) Once a sentencing court determines that a defendant is serving a sentence for a judgment that includes a legally invalid prior prison term enhancement, "the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c); *People v. Monroe* (2022) 85 Cal.App.5th 393, 399 (*Monroe*).)

Resentencing under this procedure is subject to several statutory requirements.  (§ 1172.75, subd. (d).)  As relevant here, upon resentencing, "[t]he court shall apply . . . any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  (*Id.*, subd. (d)(2).)  Additionally, "[t]he court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."  (*Id.*, subd. (d)(3).)

When a sentence is subject to recall under section 1172.75, the statute requires a "full resentencing" (*Monroe, supra*, 85 Cal.App.5th at p. 402), which permits the resentencing court to revisit all prior sentencing decisions

---

[6] Section 1172.75 was previously numbered section 1171.1. (*Coddington, supra*, 96 Cal.App.5th at p. 567, fn. 3; Stats. 2021, ch. 728, § 3; Stats. 2022, ch. 58, § 12.)

and exercise its sentencing discretion considering changed circumstances. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425.)

With these principles in mind, we turn to Holdsworth's arguments.[7]

## I. Challenges to Habitual Offender Life Sentence Are Unavailing

Holdsworth challenges his habitual offender life sentence (§ 667.7, subd. (a)(1)) on four grounds: (1) failure to correctly plead both prior prison term convictions under section 667.7 as required by *In re Vaquera* (2024) 15 Cal.5th 706 (*Vaquera*); (2) insufficient evidence that the 1994 convictions involved force likely to produce great bodily injury; (3) failure to strike the sentence pursuant to section 1385, which requires dismissal of an enhancement if it is in the furtherance of justice (§ 1385, subd. (c)); and (4) the trial court's refusal to strike the sentence was an abuse of its discretion.

The " 'Habitual Offender Law' " (§ 667.7) is a sentencing scheme for habitual violent offenders that predates the similar "Three Strikes" law. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 527 (*Romero*); *People v. Jenkins* (1995) 10 Cal.4th 234, 238 & fn. 2, 241 (*Jenkins*).) Section 667.7 "mandat[es] a life sentence upon conviction of a felony involving the infliction of, or use of force likely to produce, great bodily injury (hereafter referred to as a qualifying felony conviction)," if the defendant has served two or more prior prison terms for numerous specified crimes, including assault with a deadly weapon.[8] (*Jenkins*, at p. 241; § 667.7, subd. (a).)

---

[7] In his opening brief, Holdsworth presents this legal framework as an initial, separate argument. To the extent he claims the trial court failed to conduct a full resentencing, that argument is without merit as the record shows the court understood its duty to recall his sentence and its discretion to revisit all prior sentencing decisions.

[8] Although not relevant for our purposes, the statute excepts prison terms served "prior to a period of 10 years in which the person remained free

7

For a defendant who served two such prior prison terms, section 667.7, subdivision (a)(1) requires the court to impose a life sentence with the minimum term of imprisonment being the greatest of three alternatives, including, as applicable here, "the period equal to the hypothetical determinate term that would be imposed" otherwise. (*Jenkins, supra*, 10 Cal.4th at p. 243.)

Section 667.7 also contains a pleading requirement stating that the life sentence "imposed under this section shall be imposed only if the prior prison terms are alleged under this section in the accusatory pleading" and either admitted by the defendant or found true at trial. (§ 667.7, subd. (b).)

We address each of Holdsworth's challenges to his life sentence and conclude none has merit.

## A. The Section 667.7 Pleading Error Remains Harmless

Holdsworth first contends that, in light of the recent California Supreme Court decision in *Vaquera, supra*, 15 Cal.5th 706, the prosecution's failure to correctly plead both prior prison term convictions under section 667.7 denied him due process, notwithstanding this court's prior determinations that the error was harmless. We disagree.

### 1. Additional Relevant Background

The habitual offender allegation in the information asserted Holdsworth had served "at least two prior separate prison terms" for predicate offenses—specifically, a 1978 robbery conviction and a 1986 conviction for assault with a deadly weapon. Two pages later, after having already alleged there were at least two such prior terms, the information

---

of both prison custody and the commission of an offense which results in a felony conviction." (§ 667.7, subd. (b).)

alleged a prior prison term enhancement (former § 667.5, subd. (b)) for Holdsworth's 1978 conviction for assault with a deadly weapon.

On direct appeal, this court found that, despite an error in the pleading, there was sufficient evidence to support the habitual offender life sentence under section 667.7 as that error was harmless. (*Holdsworth I*, *supra*, A069164.) Specifically, the court agreed with the parties that one of the two priors charged in support of the life sentence (the 1978 robbery conviction) was not a valid predicate conviction for purposes of section 667.7. (*Ibid*.) However, Holdsworth's prison term for his 1978 conviction for assault with a deadly weapon—which was alleged in the information in support of a separate enhancement and found true by the trial court—was a valid predicate under section 667.7. (*Ibid*.) The court concluded that, although the failure to allege that conviction under section 667.7 was error, it did not prejudice Holdsworth because he "was given due process notice both that the People were seeking to enhance his sentence under several different enhancement statutes, and of the facts supporting each of these enhancements," as well as the opportunity to contest the truth of the 1978 assault with a deadly weapon conviction. (*Ibid*.)

In Holdsworth's 2002 petition for writ of habeas corpus, he asserted his section 667.7 life sentence was unauthorized and violated his right to due process in light of *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*) (absence of multiple victim circumstance allegation from information, which court relied upon to impose harsher sentences under "One Strike" law, violated statute's pleading requirements and defendant's due process right to fair notice of sentencing exposure). (*Holdsworth II*, *supra*, A100884.)

In the order denying the habeas corpus petition, this court distinguished *Mancebo* on the basis that Holdsworth "had adequate notice of

9

the [life] sentence enhancement provision and the facts supporting it" because the information alleged he was a habitual offender under section 667.7 as well as the valid (albeit erroneously pleaded under a separate enhancement provision) 1978 conviction for assault with a deadly weapon. (*Holdsworth II*, *supra*, A100884.) The court further concluded *Mancebo*'s rejection of a harmless error analysis was inapplicable as, in that case, the complete omission of the multiple victim allegation from the pleading had to be deemed a discretionary charging decision warranting application of the doctrines of waiver and estoppel. (*Ibid.*) In this case, however, pleading the 1978 robbery instead of the 1978 assault with a deadly weapon conviction in support of the life sentence "was, on its face, a mistake" rather than a " 'discretionary charging decision.' " (*Ibid.*) As a result, "the mispleading here is precisely the type of error that does not require per se reversal, but is reviewable under the standard of harmless error," which the court applied in *Holdsworth I* and had no reason to reconsider. (*Ibid.*, citing Cal. Const., art. VI, § 13.)

2. **Due Process Right to Fair Notice Under *Mancebo* and *Vaquera***

As noted above, in *Mancebo*, the California Supreme Court concluded the use of the "*unpled* circumstance of multiple victims to support the One Strike terms" violated not only the statute's pleading requirements, but also the defendant's due process rights. (*Mancebo*, *supra*, 27 Cal.4th at p. 753.) In reaching that conclusion, the Court noted "a defendant has a cognizable due process right to fair notice of the specific sentence enhancement

10

allegations that will be invoked to increase punishment for his crimes." (*Id.* at p. 747.)

In *Vaquera*, the Court invalidated on due process grounds an enhanced 25-year-to-life sentence imposed under the One Strike law on the basis that the pleading alleged the defendant was subject only to the statute's general 15-year-to-life sentence. (*Vaquera, supra*, 15 Cal.5th at pp. 715, 728.) It concluded the information failed to provide the defendant fair notice of the prosecution's intent to seek the more stringent 25-year-to-life sentence *and* the factual basis on which it sought that sentence. (*Id.* at pp. 723–725.) In identifying the applicable due process principles, the Court relied on *Mancebo* for the proposition that, "to satisfy due process, an accusatory pleading must inform the defendant that the prosecution is relying on specific facts to support imposition of a particular One Strike sentence." (*Vaquera*, at p. 719, citing *Mancebo, supra*, 27 Cal.4th at pp. 746–747.)

Further, the Court in *Vaquera* declined to decide whether *Mancebo*'s analysis that waiver and estoppel, rather than harmless error, applied, as Vaquera was entitled to resentencing to 15 years to life "even assuming the due process violation is subject to a prejudice analysis." (*Vaquera, supra*, 15 Cal.5th at p. 726.) The Court reasoned: "Because the information could be reasonably read as indicating that the prosecution had elected *not* to seek 25 years to life . . . , the burden is on the Attorney General to demonstrate that Vaquera was aware of the sentence the prosecution was seeking at a time when he could have taken his sentencing exposure into consideration in making key decisions about how to conduct his defense, 'including whether to plead guilty, how to allocate investigatory resources, and what strategy to deploy at trial.'" (*Id.* at p. 727, quoting *People v. Anderson* (2020) 9 Cal.5th 946, 964, and citing *Mancebo, supra*, 27 Cal.4th at p. 752.) The Court found

11

the Attorney General failed to meet that burden as the prosecution did not make its intent to seek the 25-year-to-life sentence clear until it filed its second sentencing brief months after the jury returned its verdict. (*Vaquera*, at p. 727.)

### 3. *Vaquera* Does Not Require Reversal of the Life Sentence

Contrary to Holdsworth's assertion, *Vaquera* does not require a finding that the section 667.7 pleading error requires reversal of his life sentence. Holdsworth asserts that the failure to plead the 1978 assault with a deadly weapon conviction as a section 667.7 predicate denied him fair notice that the prosecution intended to use the fact of that conviction for purposes of the life sentence, "which meant that [he] and his counsel could not properly determine [his] sentencing exposure."

As an initial matter, the Attorney General contends Holdsworth's claim is barred by the law of the case doctrine, which provides that "a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied . . . on a later appeal." (*People v. Jurado* (2006) 38 Cal.4th 72, 94.) In reply, Holdsworth asserts *Vaquera* represents an exception to the doctrine that applies when an intervening decision alters or clarifies the controlling rules of law. (*Ibid.*)

To the extent *Vaquera* clarified the due process principle described in *Mancebo*, we agree law of the case does not bar this claim. However, nothing in *Vaquera* substantively alters the due process or harmless error principles this court relied upon to deny Holdsworth's habeas corpus petition in 2003.[9]

---

[9] Holdsworth disagreed at oral argument, asserting *Vaquera* represents a substantive change on the basis that *Mancebo* did not "spell out" that an accusatory pleading must provide fair notice of the facts supporting a longer sentence and the information necessary to calculate a defendant's sentencing exposure. However, as we already noted, *Mancebo* plainly stated that due

As we found in that order, and in contrast to *Mancebo*, the prosecution's error in failing to charge the fact of the 1978 assault with a deadly weapon conviction could only be read as a mistake, not a discretionary charging decision. (*Holdsworth II*, *supra*, A100884; *Mancebo*, *supra*, 27 Cal.4th at p. 749.) It was for that reason that the error in pleading was subject to harmless error analysis. (*Holdsworth II*, A100884.)

Likewise, in *Vaquera*, the Court found the defendant was entitled to resentencing, even assuming harmless error applied, because the prosecution's total failure to charge the facts supporting the 25-year-to-life sentence anywhere in the information could reasonably be read as a discretionary charging decision not to seek the stricter sentence, depriving the defendant of "timely actual notice" that the prosecution was seeking that sentence. (*Vaquera*, *supra*, 15 Cal.5th at p. 727.)

In this case, however, it is apparent on the face of the information that the prosecution charged a life sentence under section 667.7, subdivision (a), which was supported by "*at least* two prior separate prison terms" (italics added) for predicate offenses, thereby putting Holdsworth on notice that the prosecution was seeking a life sentence and that the sentence was supported by *at least* two prior separate prison terms. (*Holdsworth I*, *supra*, A069164.) The reference to "at least two" also provided notice that, in addition to the two terms listed (one of which was not a valid predicate), there might be others that could support the life sentence. And the information made clear the prosecution was aware of the 1978 assault with a deadly weapon prison

_____

process requires "fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment" (*Mancebo*, *supra*, 27 Cal.4th at p. 747), and *Vaquera* expressly cited *Mancebo* multiple times for the proposition that the specific facts supporting an enhanced sentence must be pled (see *Vaquera*, *supra*, 15 Cal.5th at pp. 719–720).

term, which was alleged just two pages later. Therefore, the information contained the facts supporting the habitual offender life sentence and provided timely actual notice of the stricter sentence Holdsworth potentially faced, a critical fact absent in both *Mancebo* and *Vaquera*.[10] Also unlike those cases, Holdsworth had the ability at trial to contest the truth of the allegation increasing his sentencing exposure—here, the 1978 assault with a deadly weapon prison term—precisely because it *was* alleged in the information. (*Holdsworth I*, A069164.)

Additionally, we reject Holdsworth's claim that the basis for this court's harmless error conclusions in *Holdsworth I* and *Holdsworth II* has been rendered a nullity because the prior prison term enhancement (former § 667.5, subd. (b)) under which the 1978 assault with a deadly weapon conviction was alleged was stricken as invalid. Our repeated determination that the error was harmless does not rest on the *validity* of the prior prison term enhancement under former section 667.5, subdivision (b), but rather on the basis that its inclusion in the information provided him notice of the *fact* of the prior conviction and an opportunity to contest it. Therefore, we find no

---

[10] Given this notice, we find unconvincing Holdsworth's assertion that the pleading error deprived him and trial counsel of the ability to take his sentencing exposure into consideration. In contrast to *Vaquera* and *Mancebo*, it is not reasonable to interpret the information here as making a discretionary charging decision *not* to seek a stricter sentence such that Holdsworth could plausibly rule out a life sentence from his potential sentencing exposure. Although Holdsworth sought to minimize the importance of the distinction between a discretionary charging decision and a mistake at oral argument, it was crucial to *Mancebo*'s rejection of a harmless error analysis (*Mancebo*, *supra*, 27 Cal.4th at p. 749) and repeatedly factored into *Vaquera*'s conclusions that the pleading did not provide fair notice of the prosecution's intent to invoke the stricter One Strike sentence (*Vaquera*, *supra*, 15 Cal.5th at pp. 721–722, 724) and that resentencing was warranted even if harmless error applied (*id.* at p. 727).

14

convincing reason to disturb this court's prior determinations that the pleading error was harmless.

## B. Qualifying Felony Convictions Under Section 667.7

Holdsworth next challenges his habitual offender sentence on the basis that there is insufficient evidence the offenses of conviction involved force likely to produce great bodily injury in light of *In re B.M.* (2018) 6 Cal.5th 528 (*B.M.*) and therefore do not serve as qualifying felony convictions under section 667.7. We are not convinced.

When considering a challenge to the sufficiency of the evidence to support an enhancement, or, in this case, a finding under the Habitual Offender Law, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."[11] (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

### 1. Additional Relevant Facts

This court found the following relevant facts on direct appeal.

"[Concord police officers Tony Zalec and Leah Roche] saw appellant drive [a recently stolen Chevy] Blazer away from [an] apartment complex. Without activating the emergency lights, Zalec and Roche followed him in their marked police car and called for police backup support. Officer David Ishikawa responded, pulling his marked police car behind Zalec's car with his emergency lights on. . . .

---

[11] The Attorney General asserts that Holdsworth forfeited this claim by failing to raise it at resentencing. However, we address the claim on its merits as challenges to the sufficiency of the evidence supporting a judgment may generally be raised for the first time on appeal. (*People v. McCullough* (2013) 56 Cal.4th 589, 596.)

"As Zalec and Roche followed about 50 feet behind appellant, the rear window of the Blazer shattered. They saw appellant looking back at them over his shoulder with his right arm extended, pointing a hand gun directly at them while steering the Blazer with his left hand. They heard three to four loud gunshot sounds. Appellant continued looking directly at them for five to ten seconds, apparently aiming the gun at them. . . . Zalec slowed down and continued pursuing appellant from a distance of 150 to 200 feet. Appellant turned back around and continued driving.

"Officer Ishikawa . . . [became] the lead police car in pursuit. Appellant suddenly slowed down, turned around, pointed a handgun at Ishikawa for two or three seconds, and fired. Ishikawa, who was about 50 feet behind appellant, saw the muzzle of the handgun flash, and heard a bang. The shot missed. Appellant accelerated . . . [then] slowed down again, and Ishikawa could see him moving his hands around a short-barreled shotgun. Appellant turned around, took aim and pointed the shotgun directly at Ishikawa for two or three seconds. Appellant then turned back around without firing the shotgun.

"Concord Police Sergeant Matthew Morrissey and Detective Paul Jenny joined the pursuit in Morrissey's marked patrol car, becoming the lead police car one or two car lengths behind the Blazer. Appellant turned around while holding the steering wheel with his left hand, pointed the shotgun at the pursuing police car, sighted down the barrel and took aim directly at Morrissey. Morrissey could see the barrel of the shotgun move up as appellant pulled the trigger. The gun was jammed and did not fire. Morrissey saw appellant move his left hand up and down the slide action of the shotgun in an apparent attempt to manipulate cartridges from the magazine into the firing chamber. Appellant then slowed the Blazer down,

16

looked back, aimed the gun at Morrissey, sighted along the barrel, and again attempted to fire it. The shotgun was still jammed and appellant turned back around and continued driving. Appellant attempted to manipulate the barrel and pointed the shotgun at Morrissey two more times." (*Holdsworth I*, *supra*, A069164.)

Holdsworth was found guilty of, as relevant here, attempted murder as to Officers Zalec (count one), Roche (count two), and Ishikawa (count three), and assault with a firearm as to Officers Ishikawa (count four) and Morrissey (count five). (*Holdsworth I*, *supra*, A069164.)

The trial court found true the habitual offender allegation (§ 667.7, subd. (a)), which alleged Holdsworth intentionally and personally used force likely to produce great bodily injury in the commission of all charged offenses. (*Holdsworth I*, *supra*, A069164.) On appeal, Holdsworth "[did] not dispute that in the felonies of which he was convicted in this case (attempted murder and assault with a firearm on a police officer), he personally used force which was likely to produce great bodily injury within the meaning of section 12022.7."[12] (*Ibid.*)

---

[12] The Attorney General argues Holdsworth's prior failure to contest this point bars him from doing so now under the doctrine of judicial estoppel, which prevents a party from abusing the judicial process by successfully asserting one position in a proceeding and later asserting the opposite when it becomes beneficial to do so. (*People v. Castillo* (2010) 49 Cal.4th 145, 155; *People v. Watts* (1999) 76 Cal.App.4th 1250, 1261.) We agree with Holdsworth that the doctrine does not apply here as his failure to contest the issue previously does not constitute a "successful assertion" of that position, and there is no indication that his decision to raise the issue now reflects an abuse of the judicial process. (*People v. Suff* (2014) 58 Cal.4th 1013, 1061, fn. 12.)

## 2. Sufficient Evidence of Force Likely To Produce Great Bodily Injury

Contrary to Holdsworth's contention, applying the analysis in *B.M.* to the matter before us does not result in a finding that there was insufficient evidence to find Holdsworth used force likely to produce great bodily injury in, at least, the attempted murder and assault with a firearm convictions (counts one through five).

*B.M.* held that, whether an object (in that case, a butter knife) was used in a manner likely to produce great bodily injury (so as to qualify as a deadly weapon for purposes of section 245, subdivision (a)(1)) "must rest on evidence of how the defendant actually 'used' the object." (*B.M.*, *supra*, 6 Cal.5th at p. 534.) It is appropriate "to consider what harm *could* have resulted from the way the object was actually used," and, while "a mere possibility of serious injury is not enough[,] . . . the evidence may show that serious injury was likely, even if it did not come to pass." (*Id.* at p. 535, italics added.)

According to Holdsworth, the offense conduct does not meet the likeliness standard described in *B.M.* because "a driver turning and firing a gun at a pursuing police car during a high-speed chase, with no evidence that any gunshot hit someone in one of the cars or even hit a car (or that evasive action was required for officers to avoid being hit), is not a scenario in which 'the probability of serious injury is great.'" Not so.

*B.M.* recognized that, in the case of a firearm, the likelihood of causing death or serious injury is not the same as with other objects (for example, the butter knife in that case). (*B.M.*, *supra*, 6 Cal.5th at p. 537 ["Where a defendant uses a firearm with poor aim, lack of injury carries little weight not because it is appropriate to consider what injury could have resulted if

18

the defendant had had better aim, but because in many circumstances using a firearm even with poor aim is likely to produce death or serious injury."].) Although Holdsworth asserts this case represents the exception to that rule, the record refutes that claim.

The evidence showed that Holdsworth pointed a handgun directly at Officers Zalec and Roche before firing three to four times while they were at a 50-foot distance. Later, when Officer Ishikawa was also only 50 feet away, Holdsworth slowed down, turned around, and pointed a handgun at Ishikawa before firing. The gunshot was close enough that Officer Ishikawa was able to see the muzzle of the handgun flash. And, when Officer Morrissey was the lead car in pursuit, Holdsworth turned around, pointed the shotgun at him, and pulled the trigger; this was sufficiently close that Morrissey could see the barrel of the shotgun move when Holdsworth fired. Holdsworth then unsuccessfully tried to fire the shotgun again after attempting to unjam it.

That none of the bullets hit the officers was a matter of chance and is of no real import to our analysis. It is obvious that Holdsworth's firing two guns while directly aiming at the victims and at ranges of less than 50 feet—close enough for two of them to see the barrel—represents substantial evidence supporting a finding that this is one of the "many circumstances" where using a firearm involved the use of force likely to produce death or serious injury, regardless of whether Holdsworth had poor aim. (*B.M.*, *supra*, 6 Cal.5th at p. 537.) The lack of injury "carries little weight" under these circumstances. (*Ibid.*) Accordingly, this claim is without merit.

## C. The Habitual Offender Sentence Is Not Subject to Section 1385, Subdivision (c)

Holdsworth contends section 1385, subdivision (c) applies to his habitual offender life sentence and requires striking that sentence as the

predicate convictions are over five years old.  His claim is foreclosed by binding decisions of this court.

Section 1385 requires a trial court to "dismiss an *enhancement* if it is in the furtherance of justice to do so" (§ 1385, subd. (c), italics added) after considering a variety of mitigating factors, including if "[t]he *enhancement* is based on a prior conviction that is over five years old" (*id.*, subd. (c)(2)(H), italics added).  The Habitual Offender Law, however, is not an enhancement; rather, like the Three Strikes law, it "articulates an alternative sentencing scheme for the current offense." (*Romero*, *supra*, 13 Cal.4th at p. 527, citing *Jenkins*, *supra*, 10 Cal.4th at p. 254.)

Moreover, as Holdsworth concedes, numerous courts, including Divisions Two and Five of this court, have concluded that section 1385, subdivision (c), does not apply to an " 'alternative sentencing scheme' " like the Three Strikes law.  (*People v. Dain* (2024) 99 Cal.App.5th 399, 410–411, review granted, May 29, 2024, S283924; *People v. Olay* (2023) 98 Cal.App.5th 60, 64–69; *People v. Burke* (2023) 89 Cal.App.5th 237, 243–244; see *People v. Serrano* (2024) 100 Cal.App.5th 1324, 1338–1340 & fn. 4.)  That reasoning applies equally to the Habitual Offender Law, which is also an alternative sentencing scheme (*Romero*, *supra*, 13 Cal.4th at p. 527), and forecloses Holdsworth's claim of error on this basis.[13]

### D.  The Court Did Not Err by Failing To Strike the Life Sentence

Holdsworth's final challenge to his habitual offender sentence is that the court abused its discretion by declining to strike the life sentence based

---

[13] We need not, and do not, address Holdsworth's assertion that section 1385, subdivision (c) is ambiguous, as courts have rejected the claim both on the plain language of the statute (*People v. Dain*, *supra*, 99 Cal.App.5th at pp. 410–411, rev.gr.; *People v. Burke*, *supra*, 89 Cal.App.5th at pp. 243–244;

on the "overwhelming case of mitigation" presented by defense counsel at resentencing. We find no error.

As an initial matter, it is not apparent the trial court had the discretion to strike the habitual offender life sentence. (See *Jenkins*, *supra*, 10 Cal.4th at p. 243 ["[W]hen the prosecution pleads and proves that a defendant meets the requirements for sentencing as a habitual offender under section 667.7, subdivision (a)(1), the court *must* impose a life term for the qualifying felony conviction." (italics added)]; cf. *People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*) [Three Strikes law provides for an exception to its mandatory sentencing requirements under stringent standards].)

Even assuming, arguendo, the court had such discretion, we would find it did not abuse that discretion by declining to strike the life sentence. A sentencing court "does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

Here, the record reflects the trial court listened to the arguments of the parties and considered the entirety of Holdsworth's history, both as to the offense conduct and his accomplishments while incarcerated. The court concluded that, after considering all the factors it had been presented at resentencing, including Holdsworth's potential for consideration for parole by the BPH, it would leave his life sentence in place. This decision was not so irrational or arbitrary that no reasonable person could agree with it. (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

---

*People v. Serrano*, *supra*, 100 Cal.App.5th at p. 1338 fn. 4) and based on its legislative history (*People v. Olay*, *supra*, 98 Cal.App.5th at pp. 66–69).

## II. Section 654 Does Not Require Staying the Brandishing Sentences

Upon conducting a full resentencing, which occurs under section 1172.75, a trial court may revisit a decision on whether to stay a sentence, where appropriate. (*People v. Valenzuela*, *supra*, 7 Cal.5th at p. 425; *Monroe*, *supra*, 85 Cal.App.5th at p. 402.) Holdsworth argues two of his sentences for brandishing a firearm in the presence of a peace officer (§ 417, subd. (c)) must be stayed under section 654, which provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

The trial evidence showed that, after Officers Morrissey and Jenny became the lead police car in the chase, Holdsworth turned around, aimed at Officer Morrissey, and pulled the trigger, but the shotgun jammed. (*Holdsworth I*, *supra*, A069164.) Holdsworth then attempted to fire the shotgun at Morrissey again before pointing the gun at him two more times. (*Ibid.*) Subsequently, "[a] vehicle driven by Pittsburg Police Officer Jerry Sanchez with trainee Officer Matt White then became the lead police car in pursuit. Appellant turned around and pointed a revolver at Sanchez and White for four to five seconds without discharging the gun. . . . Then he turned around again and pointed the shotgun at Sanchez and White for several seconds without firing." (*Ibid.*)

In Holdsworth's direct appeal, this court rejected his claim that the sentence for brandishing a firearm as to Officer Jenny (count six) must be stayed because, he asserted, it was committed with the same intent and objective as the assault with a firearm sentence as to Officer Morrissey (count five), both of whom were in the same car. (*Holdsworth I*, *supra*, A069164.) This court also rejected his assertion that the sentence for brandishing as to

22

Officer White (count eight) must be stayed because it was committed with the same intent and objective as the brandishing sentence as to Officer Sanchez (count seven), who were likewise in the same car. (*Ibid.*)

Holdsworth's challenges under section 654 are without merit. First, he asserts the sentence for brandishing a firearm as to either Officer Sanchez (count seven) or Officer White (count eight), must be stayed, relying on *People v. Hall* (2000) 83 Cal.App.4th 1084 (section 654 prohibited more than one sentence for three counts of brandishing a firearm (§ 417, subd. (c)) based on a single act of brandishing in front of three peace officers). However, his reliance on that opinion is misplaced as the California Supreme Court addressed the *Hall* decision in a subsequent case and held that section 654 does not bar multiple punishment for violations of the same provision of law, a holding that became the law from then forward. (*People v. Correa* (2012) 54 Cal.4th 331, 343–344.) Therefore, by the time of Holdsworth's resentencing in 2023, *Hall* was no longer valid for the proposition on which Holdsworth relies. In any event, we note that, in contrast to *Hall*, Holdsworth committed more than one act of brandishing toward Officers Sanchez and White, as he first brandished a revolver before separately brandishing a shotgun. (*Holdsworth I, supra*, A069164.)

Holdsworth's second section 654 argument is that the sentence for brandishing a firearm as to Officer Jenny (count six) must be stayed. He avers it was "necessarily based on the same use of the firearm as underlying the conviction for assault with a firearm in count [five] against Officer Morrissey." We rejected substantially the same argument in Holdsworth's direct appeal, and he offers no convincing argument now as to why that conclusion was incorrect. (*Holdsworth I, supra*, A069164.) Thus, the section 654 arguments are without merit.

23

## III. Challenge to Brandishing Convictions Is Not Cognizable

Finally, Holdsworth seeks to challenge the sufficiency of the evidence supporting one of his brandishing convictions in counts seven and eight, asserting there is not substantial evidence to support both counts.

Holdsworth's attempt to challenge his convictions on the ground of sufficiency of the evidence is misplaced as attacks on the guilt phase of trial are not cognizable in this appeal from his resentencing hearing.  (See *People v. Senior* (1995) 33 Cal.App.4th 531, 535 ["California law prohibits a direct attack upon a conviction in a second appeal after a limited remand for resentencing. . . ."]; see, e.g., *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [filing of a section 1170.26 petition does not afford petitioner new opportunity to raise claims of trial error].)  Accordingly, we do not address this claim.

### DISPOSITION

The judgment after Holdsworth's section 1172.75 resentencing is affirmed.

PETROU, J.

WE CONCUR:

FUJISAKI, ACTING P. J.

RODRIGUEZ, J.

A167902
*People v. Holdsworth*

24